## Mary Brown, Administratrix, Appellant, v. City of Decatur, Appellee.

1. WORKMEN'S COMPENSATION ACT, § 3*—*when city engaged in maintenance of water plant is employer within the Compensation Act*. A city engaged in the maintenance of water mains in connection with its water works plant, *held* to be an employer engaged in maintaining a structure within the meaning of section 2 of the Workmen's Compensation Act of 1911, J. & A. ¶ 5450, which provides that the act shall apply to an employer "engaged in building, maintaining or demolishing of any structure."

2. WORKMEN'S COMPENSATION ACT, § 1*—*word "structure" in Compensation Act construed*. The word "structure" in section 2 of the Workmen's Compensation Act of 1911, J. & A. ¶ 5450, means anything that is built or constructed.

3. WORKMEN'S COMPENSATION ACT, § 11*—*when workman is killed while performing act incidental to his employment*. Where a workman for a city water works department was ordered to bring his rubber boots and assist other employees in fixing a leak in the water mains located at a place between railroad tracks, and after his arrival when he was attempting to go to a hand car standing on the tracks, for the purpose of sitting on it to take off his shoes and put on the boots, he was struck by a train and killed, *held* that the deceased at the time of the injury was in the performance of an act incidental to his employment, and that the risk which caused his death was also incidental to his employment within the meaning of section 1 of the Workmen's Compensation Act of 1911, J. &. A. ¶ 5449.

Appeal from the Circuit Court of Macon county; the Hon. WILLIAM C. JOHNS, Judge, presiding. Heard in this court at the October term, 1913. Reversed and remanded with directions. Opinion filed May 5, 1914.

LE FORGEE, VAIL & MILLER, for appellant.

BALDWIN & CAREY and FRANK M. COX, for appellee.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

*See **Cumulative Quarterly**, same topic and section number.

This is an appeal from a judgment of the Circuit Court of Macon county on an appeal in that court from an award of arbitrators appointed under the provisions of the Act of June 10, 1911, commonly called the Illinois Workmen's Compensation Act. (J. & A. ¶¶ 5449 *et seq.*) The arbitrators awarded appellant compensation in the sum of $2,496. On an appeal from said award to the Circuit Court on a trial *de novo* the judgment of the court reversed the award of the arbitrators and dismissed appellant's claim.

Appellant's intestate was killed October 19, 1912, and subsequently appellant presented her petition to the County Court, as provided by said act, asking the court to appoint an arbitrator to act with the arbitrators appointed by herself and by her intestate's employer. The court appointed an arbitrator and the three arbitrators proceeded to hear the matters in dispute and filed its report with the Secretary of the State Bureau of Labor Statistics, which report awarded to appellant the said sum as the amount of compensation to be paid to her under said act for the death of her intestate. Both appellant's intestate and appellee had accepted the provisions of the act in so far as they applied to the employment. It is admitted that the amount of compensation awarded by the arbitrators is correct, if compensation is recoverable at all. There is no apparent conflict as to the facts, but the principal contentions of appellee are that the employment of the deceased was not one of the employments covered by the act and that his death was not caused by the sort of injury for which the act allows compensation, that is, that it did not arise out of his employment. It is also suggested that appellee was not an employer maintaining a structure within the meaning of the act.

Appellee is a municipal corporation and operates its own filtration plant and water system, and as a part of this system operated and maintained a system of water mains for the supplying of water to the city.

One of these water mains ran beneath the surface of a public highway lying a short distance east of the eastern boundary of the city, called Gedde's Lane. Gedde's Lane runs north and south across the right of way of the Wabash Railroad Company. The tracks of the railroad consist of two main line tracks and a number of switch tracks lying on either side of the main tracks. Plaintiff's intestate, Brown, on the day in question was, and had been for about a year prior thereto, an employee in the City Water Works Department. A leak had been discovered in the water main at the Gedde's Lane crossing and had been located at a point between the south main track and the next switch track south of it. A. O. Cochran, foreman and employee of the water department, had charge of the work of repairing this leak. Cochran ordered Brown and one Walmsley, another employee, to go out to the crossing and repair the leak. Cochran himself and Walmsley arrived at the crossing about half past one in the afternoon and Cochran set Walmsley to work immediately. Walmsley, at Cochran's request, had brought with him a pair of rubber boots to wear while repairing the leak. A hand car was standing a short distance, about ten steps, from the leak on one of the switch tracks. When Cochran and Walmsley arrived at the place Walmsley sat down on the hand car, took off his shoes and coat and put on the rubber boots. He left his shoes and coat on the hand car. Walmsley immediately began to dig out the dirt and mud around the leak, while Cochran kept watch for approaching trains. Brown had been doing some other work that day and before Cochran and Walmsley went out to repair the leak Cochran telephoned to Brown to come out there and assist Walmsley. Cochran told Brown to bring his rubber boots with him "so that he could use them if it was muddy and he needed them to get into the hole." Brown arrived about two o'clock and brought some caulking tools in a bucket and a pair of

rubber boots. He deposited the bucket with the caulking tools by the hole and Cochran gave him his instructions, which were that one man should watch for the trains while the other worked. Cochran did not intend to stay after Brown arrived, and testified that he gave these instructions to Brown and Walmsley because he recognized the danger of working there between the tracks on which the trains were constantly passing. After Brown received his instructions from Cochran he proceeded towards the hand car for the purpose of sitting on it while he took off his shoes and put on his rubber boots. It was the only place on which he could sit unless he sat on the ground. He had proceeded but a short distance towards the hand car, carrying his rubber boots, when he was struck by an engine hauling a passenger train, and killed. There is no conflict over the material facts. The trial court found as a proposition of fact that it was an inference of fact that Brown in attempting to cross the railroad tracks was doing so for the purpose of going to the hand car in order to remove his shoes and put on his rubber boots for the purpose of his work. The trial was had before the court without a jury and as no cross-error has been assigned to this finding of fact it must be conceded to be true. However, the evidence fully sustains this inference of fact and it is correct. The trial court held that appellee was an employer engaged in maintaining a structure and that the injury was received in the course of the employment of deceased, but that it did not arise out of said employment, and that appellee was not liable to pay compensation, and dismissed the petition.

Section 2 of the act (J. & A. ¶ 5450) provides as follows: "The provisions of this Act shall apply to every employer in the State engaged in the building, maintaining or demolishing of any structure." Municipalities are not excepted from the provisions of the act, and it is clear that appellee, the City of Decatur,

is an employer within the intention of the act, provided it was engaged in the building, maintaining or demolishing of any structure.

It would require a most strained and unreasonable construction to hold that the maintenance of water mains in connection with a water works plant would not be the maintaining of a structure. The word "structure" commonly means anything that is built or constructed, and that it was the intention of the Legislature that such should be its definition in the construction of this act there can be no doubt.

It is conceded that the injury occurred in the course of the employment of plaintiff's intestate, but it is insisted by appellee that it did not arise out of said employment. The Illinois Act is substantially adopted from the English Acts of 1897 and 1906 (Stat. 60, 61, Vict. ch. 37; Stat. 6 Edw. 7, ch. 57), and it will be presumed that the construction given to them by the English courts is to be applied to the Illinois Act unless such construction is inconsistent with the spirit and policy of the laws of this State. Section 1 of the Illinois Act (J. & A. ¶ 5449) provides as follows:

"Any employer covered by the provisions of this Act in this State may elect to provide and pay compensation for injuries sustained by any employee arising out of and in the course of the employment according to the provisions of this act, and thereby relieve himself from any liability, for the recovery of damages, except as herein provided."

Section 1, subsec. 1 of the English Acts provides as follows:

"If in any employment (to which this act applies) personal injury by accident arising out of and in the course of the employment is caused to a workman, his employer * * * shall be liable to pay compensation."

The title of the Illinois Act is: "AN ACT to promote the general welfare of the people of this State, by providing compensation for accidental injuries or death

suffered *in the course of employment."* The generic classification of the injuries for which an employer is liable under the act is those that are received in the course of the employment, but these are limited and restricted to such as also arise out of the employment. It is conceivable that in many instances it might be difficult to determine the distinction between injuries received in the course of employment and those that arise out of such employment. The injury received in this case was caused by an agency beyond the control of the employer.

The first question which naturally presents itself for consideration is, was the deceased at the time of the injury in the performance of an act incidental to his employment. He was proceeding to the hand car for the purpose of putting on his rubber boots. He had been directed by the foreman, Cochran, to bring his rubber boots with him. If it should be of any importance that he should have received an express order from his employer to wear said rubber boots, such order will be implied from the fact that he was directed to bring them with him. However, it was natural, proper and incidental to the work which he was to perform to wear rubber boots regardless of any order or direction from the employer. An employee can more efficiently perform his duties to his employer if attired in apparel inuring to his comfort and health while in the performance thereof. Walmsley, with the acquiescence of the foreman at least, had used the hand car for a similar purpose. Deceased saw Walmsley's shoes and coat on the hand car, which was about ten steps away, and as it was the only object on which he could sit while he put on his boots, unless he sat upon the ground between the tracks, he was not acting out of the sphere of his employment in attempting to go to the hand car for said purpose. The act he was doing at the time was incidental to and in the furtherance of his duties to his employer. Some of the English cases have given a

very liberal construction to the question of what acts of employees are incidental to their employment. In the case of *Keenan v. Flemington Coal Co.*, 5 Fraser 164, 4 N. C. C. A. 122, a miner quit work temporarily to get a drink at a boiler. There were two ways of reaching the boiler, one a safe and usual way and the other a dangerous way. He chose the dangerous way and in returning was killed. Compensation was allowed and it was held that a man does not cease to be in the course of his employment every time he, for some necessary reason, leaves his work, and that it was a necessary reason for stopping work to get a drink of water, because when a man feels thirsty it hinders him from working with vigor. In the case of *Wilson v. M'-Laughlin*, etc., Sess. Cas. 529, a workman was employed to load and unload trucks hauled by a traction engine. While riding on one of them, and when under the influence of liquor, he dropped his pipe, and in getting down to pick it up he was run over. Compensation was allowed, and it was held that he was doing a thing which a man while working may reasonably do. ''A workman of this sort may reasonably smoke, he may reasonably drop his pipe, and he may reasonably pick it up again,'' and it was held that his attempt to get the pipe was merely an incident in the day's work. It is urged that going to the hand car to put on his boots was a mere act of convenience for the personal benefit of the deceased. Counsel confuses the act itself with the manner of doing the act. The criterion is what was the deceased doing, and not what was the manner in which he was doing it. If he was attempting to perform an act incidental to the duties of his employment, it matters not that he took a more convenient way of doing it than was necessary, nor that he took a more dangerous way than was necessary. *Keenan v. Flemington Coal Co., supra; Astley v. Evans*, v K. B., 1036, 3 N. C. C. A. 239; *Evans & Co. v. Astley*, A. C. 674, 3 N. C. C. A. 239. Compensation

has also been allowed when the employee has been injured while performing his duties in a manner in direct disobedience to his orders. In *Harding v. Brynddu Colliery Co.*, 2 K. B. 747, 2 N. C. C. A., 864, 3 N. C. C. A. 276, a miner was directed to drill a hole from a stall above into a stall below to allow gas to escape. The stall below was boarded up as dangerous. He was unable to drill the hole from the upper stall and asked permission to go into the lower stall to tap in order to expedite the work. Permission was refused him, and he deliberately disobeyed, went into the dangerous stall and was injured. Compensation was allowed. In *Conway v. Pumpherston Oil Co.*, Sc. Sess. Cas. 660, 2 N. C. C. A. 865, 3 N. C. C. A. 276, a miner in direct disobedience to orders went into an entry filled with gas to get a pick which he had left there the previous day and was injured. Compensation was allowed and it was held that he was fetching a pick for the work in which he was engaged and was working within the general sphere of his employment. In *Whitehead v. Reader*, 2 K. B. 48, the injured employee was a carpenter, part of whose duty it was to sharpen tools at a grind stone operated by machinery. He had been forbidden to touch the machinery. The driving belt slipped and in trying to adjust it he received the injury complained of. Compensation was allowed and it was held that he was performing an act incidental to his master's business and was not idling or doing something which was clearly beyond the scope of his employment.

It is further contended that being struck by the engine while crossing the tracks was a risk shared by all mankind and was not such a hazard as was incidental to his employment. Risks incidental to the employment do not mean such as are peculiar to the employment in question as distinguished from other employments. In *Warner v. Couchman*, 1 K. B. 351, 1 N. C. C. A. 51, it was said: "The law does not say

'arising out of his employment and out of that employment alone.' Other employments have nothing whatever to do with the question.'' If the risk was such that by reason of the work in which he was engaged, in the place where he was engaged and in the manner in which he was compelled to perform that work, he was more readily exposed to it than the public generally, then it was abnormal and incidental to his employment. That a person digging a trench in the midst of railroad tracks over which trains are constantly passing is more exposed to the risk of being injured by trains than the public generally in passing over railroad tracks is self-evident, and while the deceased was not injured while actually digging the trench he was on the tracks for that purpose and pursuant to the duties of his employment and was engaged in an act incidental to his employment. The English authorities have also given a liberal construction to this phase of the question. In the case of *Pierce v. Provident Clothing Co.,* 1 K. B. 997, 3 N. C. C. A. 279, a canvasser in a London district was killed on the streets by an electric car while riding a bicycle. He was permitted to ride a bicycle by his employer, but not required to do so. Compensation was allowed on the ground that his duties necessarily involved his spending a great part of the day in the streets, and he was, beyond all doubt, much more exposed to the risks of the streets than ordinary members of the public. Under a substantially similar state of facts, compensation was also allowed in the case of *M'Neice v. Singer Sew. Mach. Co.,* Sc. Sess. Cas. 12, 3 N. C. C. A. 278 To the same effect is *Millar v. Refuge Assurance Co., Ltd.,* Sc. Sess. Cas. 37, 3 N. C. C. A. 279. In *Challis v. London & S. W. Ry. Co.,* 2 K. B. 154, 3 N. C. C. A. 273, a locomotive engineer was injured by a stone thrown by a mischievous boy from a bridge below which the train was passing. Compensation was allowed on the ground that it was a matter of common knowledge and

experience that a train in motion has great attraction for mischievous boys, and that it was a risk incidental to the employment. In *Anderson v. Balfour,* 2 Ir. Rep. 497, 3 N. C. C. A. 275, a gamekeeper was attacked by a poacher. Compensation was allowed on the ground that it was a matter of common knowledge that hospitality exists between gamekeepers and poachers and that one of the risks attached to the occupation of gamekeeper was the risk of this sort of injury. In *Nisbet v. Rayne & Burne,* 2 K. B. 689, 3 N. C. C. A. 268, a cashier was murdered on a train while carrying money to a colliery to pay the men. Compensation was allowed on the ground that the man was exposed to the special risks assumed by cashiers, who are known to carry considerable sums of money on regular days by the same route to the same place, of being robbed. In *Andrew v. Failsworth Industrial Society,* 2 K. B. 32, 3 N. C. C. A. 276, a bricklayer on a scaffold thirty feet above the ground was struck by lightning during a thunderstorm. Compensation was allowed on the ground that the position of the bricklayer was a very exposed one and on account of the elevation from the ground the risk was appreciably greater than the normal risk. In *Davies v. Gillespie,* 105 L. T. 494, the first officer of a vessel in a West Indian Port received a sun stroke while superintending the loading of a cargo. He was compelled to stand on the steel deck of the vessel for a long time exposed to the full glare of the sun, and compensation was allowed on the ground that it was an abnormal risk. In *Morgan v. Owners S. S. "Zenaida,"* 2 B. W. C. C. 19, a common seaman on a vessel in a Mexican port was ordered over the side to paint the ship. He protested on account of the excessive heat, but was ordered to continue. Compensation was allowed because the risk was abnormal.

We have not attempted to comment upon or differentiate between all the cases that have been cited in the briefs, but we are of the opinion that not only from

the principles of construction enumerated from the cases mentioned, but from a plain, common-sense view of the act and the facts in this case, that at the time of the injury appellant's intestate was in the performance of an act incidental to the duties of his employment, and that the risk which caused his death was also incidental to his employment.

The judgment of the Circuit Court will therefore be reversed and the cause remanded with directions to enter judgment in favor of appellant on the award of the arbitrators as contained in said report.

*Reversed and remanded with directions.*