EL PASO ELECTRIC CO. et al. v. SAFE-WAY STORES, Inc., et al.

No. 4918.

Court of Civil Appeals of Texas.
El Paso.

March 5, 1953.

Rehearing Denied April 1, 1953.

Kemp, Smith, Brown, Goggin & White, El Paso, for appellants.

Jones, Hardie, Grambling & Howell, El Paso, for appellee Lowman.

Andress, Lipscomb & Peticolas, El Paso, for appellee Safeway Stores.

Cunningham & Malone, El Paso, for appellee Barnes.

McGILL, Justice.

This was a suit by appellants to recover damages for injury to a concrete duct in which were encased six conduits, four of which contained cables by which appellant El Paso Electric Company furnished electric energy and power to South El Paso, and one of which was rented by the El Paso Electric Company to the El Paso City Lines as a negative return feeder cable for power furnished by the Electric Company to the City Lines for its transportation system.

We shall refer to appellant as plaintiffs, to defendant Safeway Stores, Inc., as Safeway, to R. D. Lowman as Lowman, and to defendant J. W. Barnes as Barnes.

The duct was laid in an alley between South Mesa Avenue and South Stanton Streets which alley adjoins Safeway's property on the east and extends south from Paisano Drive or Second Street, to Fourth Street. The duct was underground, about two feet, and was approximately twenty-four inches in width and sixteen or eighteen inches in thickness. It was formed by pouring concrete into a ditch in which the conduits had been laid. The electric company had a franchise from the City of El Paso authorizing it to put its cables under the streets and alleys of the city. This was done by the company in 1937. Safeway entered into a contract with Lowman, a General Contractor, to construct a building on its property. The plan called for excavation for a basement. Lowman contracted with Barnes to excavate the space for the basement and haul off the dirt. The excavation was to be more than ten feet in depth. When it had reached a point beyond this depth approximately 120 feet of the duct caved into the excavation, breaking the cables and causing considerable damage. This occurred on the morning of September 21, 1950. The case went to trial before a jury but at the close of the evidence the court gave a peremptory instruction to find for defendants, and on such verdict entered a take nothing judgment against plaintiffs.

Much of the controversy centers around the proper construction of a provision of the Building Code of the City of El Paso. We quote the pertinent provisions:

"Art. VIII.—Sec. 801. 1. General. Until provisions for permanent support *has* been made, excavations shall be properly guarded and protected to prevent the same from becoming dangerous to life and limb, and where necessary shall be sheetpiled and braced to prevent the adjoining earth from caving in *by the person causing the excavation to be made.* * * *

"2. (b) When an excavation extends more than 10 feet below curb level, the person *causing such excavation to be made* shall, if afforded the necessary consent to enter upon the adjoining land at his own expense, preserve and protect from injury, every building or structure the safety of which may be affected by such excavation, and when necessary shall underpin and support the same by proper foundation, irrespective of the depth to which the foundations of such building or structure may extend." (Emphasis ours.)

Other provisions of the Code defined "Building" as

" 'Building' means a combination of materials to form a construction that is safe and stable and adapted to permanent or continuous occupancy for residence, business, assembly or storage purposes. The term 'building' shall be construed as if followed by the word or words 'or part thereof'."

and "Structure" as

" 'Structure' means a combination of materials, other than a building, to form a construction that is safe and stable, including among others, stadium, gospel, circus tents, reviewing stands, platforms, stagings, observation towers, radio towers, sheds, coal bins, fence and display signs. The term 'structure' shall be construed as if followed by the words 'or part thereof'."

In Safeway's contract with Lowman it is provided:

"Contractor agrees, at the expense of contractor, to comply with all laws, ordinances and regulations, to obtain all permits and licenses, to furnish all of the labor, tools, appliances, equipment and materials and to pay all sales taxes and other taxes thereon and to perform all of the work required under the plans, general conditions, specications and blue prints hereinafter referred to and the bulletins issued as addenda thereto, and/or required for the proper completion of the work hereinafter described. * * *

"Shoring. This Contractor shall shore all basement walls for protec-

tion of adjoining property and public thoroughfare. The soil in the area will cave if left open to the weather for more than a week's time."

It is appellee's main contention that the word "Structure" as defined in the code did not apply to the duct, and therefore defendant's failure to comply with the code did not render them guilty of negligence per se.

There can be little doubt that the construction of the City Building Code was a matter of law for the court, and that the evidence of the contractors and engineers as to the meaning of the word "structure" was inadmissible. The parties seem to concede this in their briefs. There can be no valid distinction between the building code and unambiguous written instruments generally, the construction which is generally held to be for the court. Dallas County Fresh Water Supply District No. 7 v. Mercantile Securities Corp., Tex.Civ.App., 110 S.W.2d 187; 27 Tex.Jur. p. 412, Sec. 4; Texas Law of Evidence, McCormick & Ray, p. 14, Sec. 9; Texas Company v. Grant, 143 Tex. 145, 182 S.W.2d 996.

The exception is thus stated in Taylor v. McNutt, 58 Tex. 71, 73:

"That, as a general rule, it is the duty of the court to instruct the jury upon the legal effect of written evidence, admits of no doubt, but it is also true that there are exceptions to that general rule. When the effect of the writing does not depend entirely upon the construction or meaning of its terms, but upon extrinsic facts and circumstances, then it becomes the duty of the court to submit for the consideration of the jury the instrument, together with the attending facts and circumstances adduced in evidence, with such instructions upon the legal effect of the instrument as would meet the various phases presented by the extrinsic evidence." .

The word "structure" has been construed and defined by courts of many jurisdictions. The only definition by a Texas Court which is cited, or which we have found, is by the Court of Criminal Appeals in Favro v. State, 39 Tex.Cr.R. 452, 46 S.W. 932, in which the Century Dictionary definition was quoted, apparently with approval:

"'Structure' is defined to be 'that which is built or constructed; an edifice or a building of any kind. In the widest sense, any production or piece of work artificially built up, or composed of parts joined together in some definite manner; any construction.'"

Some definitions from other jurisdictions are:

"The word 'structure' commonly means anything that is built or constructed, and that it was the intention of the Legislature that such should be its definition in the construction of this act there can be no doubt." Brown v. City of Decatur, 188 Ill.App. 147, loc. cit. 151,

holding that water mains maintained by the city were a structure within the meaning of a workmen's compensation act.

"The word 'other structure,' following an enumeration of particular things, comprehends all the properties specifically enumerated, and any similar thing constructed, should the enumeration prove incomplete, but it does not embrace matters not resembling, related to, or belonging in, the same class with the structures or improvements specifically enumerated." Barr Lumber Co. v. Perkins, Cal.App., 295 P. 552, loc. cit. 555,

holding that an oil derrick constituted an "other structure" within the meaning of the Legislative Act there construed.

Dysart v. Youngblood, 44 N.M. 351, 102 P.2d 664, holding that a hole drilled for a water well was a structure within the meaning of the laborer's lien statute there involved.

Kanawha Oil & Gas Co. v. Wenner, 71 W.Va. 477, 76 S.E. 893, 43 L.R.A.,N.S., 559, holding that a hole drilled for an oil well was a structure within the meaning of the mechanic's lien statute there construed; and in Albuquerque Foundry &

Machine Works v. Stone, 34 N.M. 540, 286 P. 157, loc. cit. 158, the court said:

"We are accustomed to think of a 'structure' as something above ground, in the nature of a building, but this is not necessarily the only meaning of the word. As it is used in our statute, the term is broad and should be construed in connection with the preceding terms which extend the subjects of the statute over a wide range. The authorities are not all in accord in holding a well to be a 'structure,' but the peculiar wording of our statute leads us to conclude that it should be so construed."

and held an oil well to be a structure within the meaning of a lien statute; in U. S. ex rel. Murphy v. Warden of Clinton Prison, D.C., 29 F.Supp. 486, loc. cit. 492, the court used this language:

"The word 'structure' is one of the broadest words in the English language and is very comprehensive. All buildings of any name and nature are structures. Structure would include: Hotel, apartment house, office building, railroad station, theatre or any other building."

and strongly intimated that a statute which provided

"A person who possesses or uses such machine-gun is guilty of a felony. The presence of such machine-gun in any room, dwelling, structure or vehicle shall be presumptive evidence of its illegal possession by all the persons occupying the place where such machine-gun is found." Penal Law N.Y., McKinney's Consol. Laws, c. 40, § 1897.

was unconstitutional. In City of Rock Island v. Industrial Commission, 287 Ill. 76, 122 N.E. 82, it was held that an improved street was a structure within the meaning of a workmen's compensation act; and in Armenti v. Brooklyn Union Gas Co., 157 App.Div. 276, 142 N.Y.S. 420, it was held that a concrete sewer although located beneath the surface of the street was a structure within the meaning of a labor law there construed; and in 60 C.J. p. 666, Sec.

2, it is said, referring to the word "structure" that

"The term does not apply exclusively to things above the ground."

■ It seems obvious, therefore, that the definition of the word "structure" contained in the building code above quoted, if given its broad meaning is sufficiently comprehensive to include the concrete duct here involved; nor is the definition contained in the Code limited by the words "including among others stadium, gospel, circus tents, reviewing stands, platforms, stagings, observation towers, radio towers, sheds, coal bins, fence and display signs." The words "including" and "includes" have been said in their generally accepted use to be terms of enlargement and not of limitation. Peerless Carbon Black Co. v. Sheppard, Tex. Civ.App., 113 S.W.2d 996, loc. cit. 998, (w.r.); Houston Bank & Trust Co. v. Lansdowne, Tex.Civ.App., 201 S.W.2d 834, loc. cit. 838 (w. r. n. r. e.); citing 31 C.J. 395, Sec. 3–C; 42 C.J.S., Include, p. 526. See also Koenig v. Johnson, 71 Cal.App.2d 739, 163 P.2d 746, loc. cit. 750, (2, 3). And the familiar doctrine of ejusdem generis is inapplicable in view of the words "among others" used in the definition. See Barr Lumber Co. v. Perkins, Cal.App., 295 P. 552, loc. cit. 554.

■ However, the question is not so easily settled. In most, if not all of the cases above cited the courts gave more weight to the particular Legislative Act they were construing than to the ordinary meaning of the word "structure". They sought to ascertain the intention of the Legislative body. This is the paramount rule governing the construction of city ordinances in this State.

See 30 Tex.Jur. p. 307, Sec. 170:

"The purpose of the enactment will be considered in construing it, that is the evil sought to be remedied and the means sought to be supplied to that end will govern largely as to the intention." Id.

Unquestionably the dominant purpose of the provisions of the building code here involved was for the protection of the adjoin-

ing property owners from the harshness of the common law rule which confined the right of lateral support to soil alone, and did not extend it to the adjoining buildings or structures. McDaniel Bros. v. Wilson, Tex.Civ.App., 45 S.W.2d 293, loc. cit. 296. See also 50 A.L.R. p. 519(a); and 1 Am. Jur. p. 524, Sec. 29. If it may be said that no question of lateral support of an adjoining property is here involved because Safeway owned the fee to the center of the alley, and the duct was entirely on Safeway's land, yet we judicially know that the much discussed case of Fletcher v. Rylands, L.R. 1 Exchg. 265, affirmed by the House of Lords, L.R. 3 H.L. 330, and the maxim there applied sic utere tuo ut alienmun non laedas is not and has never been the law in Texas. Gulf, C. & S. F. Ry. Co. v. Oakes, 94 Tex. 155, 58 S.W. 999, 1002, 52 L.R.A. 293, a case which has been many times cited and never overruled or modified. There the court said:

"The answer to the other branch of the question, whether or not it was a good defense that appellant, in planting the grass, acted as a person of ordinary prudence would have done under the same circumstances, is involved in what we have already said. While the ground of liability, if one can be shown, would be negligence or other culpable conduct on the part of appellant, nothing of the sort could be imputed to it if what it did was, under the principles stated, only a legitimate use of its property, and the facts stated fail to show that it was not such a use." See also Turner v. Big Lake Oil Co., 128 Tex. 155, 96 S.W.2d 221.

So, apart from the Building Code and the common law of liability for lateral support for the soil only of an adjoining property owner, in this state it is necessary to show negligence or other culpable conduct to fix liability on the excavator. See also 50 A.L.R. 499(d) citing Rowland v. Murphey, 66 Tex. 534, 1 S.W. 658. The Legislative body may have had the harshness of this rule in mind, as well as the lack of common law liability for lateral support for adjoining buildings and structures in adopting the building code for the city of El Paso, The Code, Section 801(1, 2(b) above quoted as to buildings and structures above ground, unquestionably prescribes the requirements necessary to relieve the excavator from liability. It permits him to decide when sheet piling or underpinning is necessary to prevent the excavations "from becoming dangerous to life or limb" and "to preserve and protect from injury every building or structure the safety of which may be affected by such excavation", but he does so at his peril. This, as we understand it, is the holding in McDaniel Bros. v. Wilson, supra, which reached the Supreme Court by application for writ of error on subsequent appeal, Tex.Civ.App., 70 S.W. 2d 618 (wr. ref.). Since this onerous burden was put upon the excavator as to structures above ground, we can perceive no valid reason why the code does not place it upon him when the structure is underground. True, in many instances he may not know of its presence, but likewise he may not be negligent in deeming the requirements of the code unnecessary when the building or structure is above ground. We also think some weight should be given to the words "or part thereof" included in the definition of "structure". The evidence shows that in 1937, pursuant to a franchise granted it by the city, the Electric Company laid its cables under several city streets in south El Paso. All these cables were enclosed in conduits, which were encased in a concrete duct, such as the portion of that which caved in in this case. There were manholes at street intersections so that the Electric Company's employees could pull the cables and repair them. These manholes were necessary in order to prevent injury to the cables. It seems to us that the entire installation was a structure within the meaning of the code; that it would be a strained construction to hold otherwise. This being so, the words "or part thereof" brought that portion of the duct which caved in under the protection of the code.

We shall briefly discuss the common law liability of appellees, should we be in error in our construction of the building code. As above pointed out, the contract between

508

Lowman and Safeway contained a provision that the contractor agreed to comply with "all laws, ordinances, rules and regulations" bearing on the conduct of the work as drawn and specified, and also that he should shore the basement walls for protection of the adjoining property and public thoroughfares. Mr. Roy M. Walker, appellant's senior electrical engineer, testified as follows:

"Q. Did you have occasion at any time to talk to any of the foremen or supervisors, or contractors, down there at that site, in reference to their excavating for that basement? A. I did.

"Q. Now would you just tell the jury in your own words what the occasion was and when it was and what was said, to whom you talked *to* and what was told you? * * * A. * * * After the excavation was down to about depth on the east wall of the excavation was being cut down and squared up preparatory to placing the structural wall on the east side there of the basemen—, why one day as I passed I noticed that the shovel, the power shovel, was excavating there on the east wall to square and walked over to the construction office, or near it there, and I asked some workman who the boss on the job was and he pointed out a gentleman to me, says 'that's the boss', and I approached this man and I asked him— told him I was with the El Paso Electric and that we had a duct run in the alley and that, judging from the nature of the soil which was mostly sand, that I did not think the wall would hold when he cut it down and that there was a likelihood that the wall would cave and we would lose this duct bank, and I explained to him that it carried high voltage cables and to feed the uptown area of El Paso, and I requested him to secure it so that there would not be a cave-in.

"Q. Now when was that, that you had that conversation? A. It was some three or four days before the cave-in that occurred. Some three or four days.

"Q. Some three or four days. A. I am sure it was at least three days before.

"Q. Now the man that was pointed out to you by this workman, he was pointed out to you as being the man that was in charge of the work that was going on there at the time? A. Yes, that's what this man told me he was.

"Q. Do you know the name of the man that you talked to? * * * Do you recall whether or not the man told you that his name was George Todaro? A. A name something like that."

The evidence was undisputed that George Todaro was Lowman's Superintendent on the job. Mr. Robert E. Gnauck, plaintiff electric company's Superintendent of Transmission, testified:

"Now did it ever come back to your mind about that big hole that you had seen as you drove by there from time to time,—when they told you about this cave-in there, did anything occur to you about the fact that you had seen a big hole there and about the fact that you did not have a cable just four feet from the edge of the west line right next to that excavation, did it occur to you as being a dangerous situation when you learned that part of it had started to cave in? A. I don't know that I can state to you here that I knew that they had dug that deep in there at any time prior to the time that I knew that this Paisano cable was in danger.

"Q. But you knew they were digging? A. I knew they were digging.

"Q. You knew that cable was only buried eighteen inches under the soil there, didn't you? A. Yes, sir.

"Q. And you knew that they were well below that eighteen inches, didn't you? A. What is well below?

"Q. Well, a foot below would be enough to cause it to cave, wouldn't it? A. No, sir.

"Q. You knew they were below it? A. Yes, sir.

"Q. As you drove by there you could look over there and see that hole,

you didn't know whether it was eight feet or thirteen feet, but as an engineer you knew it was a substantial depth, didn't you? A. As I said before, I had not been by there in several days before and that entire excavation could have occurred in that period.

"Q. But I believe you did say, though Mr. Gnauck, that you knew they were excavating there, you had been by there and had seen them, had seen the excavation going on? A. On that evening I went by there."

As to defendant Barnes there was evidence by Charlie Sanchez and his brother Jesus (Chuy) Sanchez, that parts of the duct were visible almost from the date when the excavation was begun. Plaintiff alleged that defendants were negligent in the manner in which they were doing excavation work:

"That it was negligence upon their part to carry on and conduct their excavation and the removal of the perpendicular and lateral support adjacent to and under Plaintiff's structure without taking such precautions as an ordinarily careful and prudent person would have taken under the circumstances, and as a proximate consequence and as a proximate result thereof the earth gave way and the structure and system were destroyed to Plaintiff's great harm and damage."

The evidence above quoted and referred to was sufficient to take to the jury issues as to the negligence of Lowman and Barnes. We find no evidence of negligence of Safeway except as the building code makes Safeway negligent. If defendant Safeway can be held at all apart from the building code it can only be held on the theory that it aided and abetted a trespass committed on plaintiff's property by Lowman and Barnes. See McDaniel Bros. v. Wilson, 70 S.W.2d 618, supra. Plaintiff's pleading grounded the common law liability of defendants on negligence, and not on a trespass. Since we are remanding the cause as to all parties we think it unnecessary to authoritatively decide whether on the record before us Safeway may be held as a trespasser.

Defendants seek to sustain the judgment on the ground that the record shows that plaintiffs were guilty of contributory negligence as a matter of law, because they did not notify defendants of the presence of the duct in the alley. The testimony of Roy Walker and Gnauck and of the Sanchez brothers clearly makes this question one of fact as to Lowman and Barnes. As to defendant Safeway, it may be questioned whether there was any duty on plaintiff to notify Safeway of the danger. See 1 C.J. p. 1222, Sec. 56; and 2 C. J.S., Adjoining Landowners, § 18(c), p. 20. In view of our disposition of the case we think it unnecessary to decide this point.

The judgment is reversed and the cause remanded.

Reversed and remanded.

PRICE, C. J., did not participate in the disposition of this case.

On Appellee Safeway Stores, Inc., Motion for Rehearing and Motion of Appellants El Paso Electric Company and El Paso City Lines upon Reconsideration of Question of Trespass.

McGILL, Justice.

Most careful consideration has been given to appellee Safeway Stores, Inc.'s motion for rehearing, as well as all other motions filed by the parties.

We may have been in error in indicating that the plaintiff's pleading was not sufficient to comprehend a trespass committed by Safeway. However, on further consideration and review of the record we have concluded that there is no evidence to sustain any liability against Safeway on the ground of trespass, and that if upon another trial Safeway may be held liable at all, it can only be on the ground that the concrete duct was a structure within the meaning of the building code, and Safeway is liable on that ground. Our former opinion is modified to this extent only.

All motions to set aside the judgment reversing and remanding the judgment of the trial court are overruled.