The PRUDENTIAL INSURANCE COMPANY OF AMERICA, Appellant,

v.

Barbara A. LUCAS, Appellee.

No. 11763.

Court of Civil Appeals of Texas, Austin.

June 24, 1970.

Rehearing Denied July 15, 1970.

**430**

Small, Herring, Craig, Werkenthin & Shannon, Bob Shannon, Austin, for appellant.

Byrd, Davis, Eisenberg & Clark, Don L. Davis, Austin, for appellee.

O'QUINN, Justice.

Decision in this case turns on whether a pickup truck being driven by the insured at the time of his death was a private automobile of pleasure car design not in use for commercial or occupational purposes within the meaning of the terms of an insurance policy.

The life insurance policy involved provided for payment of $15,000 upon death of the insured. It also afforded an additional benefit of $3,000 if the insured died while driving or riding in a "private automobile of pleasure car design (including station wagon or similar body types) not in use for commercial or occupational purposes by such person."

Lewis P. Lucas, the assured, was killed in a collision in Blanco County on June 19, 1968, while driving his pickup truck in which he and his family were traveling from their home in Hico, Texas, to Seguin, Texas, to visit his wife's parents.

Appellant insurance company paid the beneficiary $15,000 pursuant to the policy, but refused to pay the additional benefit of $3,000 on the basis that the insured at the time of his death was driving a pickup truck rather than an automobile of pleasure car design. Appellant on appeal makes no contention that at the time of the accident the pickup was being used for commercial or occupational purposes.

The case was tried before the court without a jury, and at the conclusion of the trial the court entered judgment for appellee, surviving spouse of the insured, for the $3,000 benefit plus penalty of twelve percent and attorney's fees.

Pertinent provisions of the policy affording the additional benefit are expressed as set out:

"NON–OCCUPATIONAL VEHICLE ACCIDENT DEATH BENEFIT. If an Accidental Death Benefit is payable, as specified in the Accidental Death Benefit provisions, by reason of the death of the Insured * * * and if the required due proof shows that the injury resulting in the accidental death was sustained by such person (a) while driving or riding in a private automobile of pleasure car design (including station wagon or similar body types) not in use for commercial or occupational purposes by such person * * the Company will pay, in addition to all other benefits provided by the policy, a Non-occupational Vehicle Accident Death Benefit. * * *"

Appellant contends that the right to recover depends upon the nature of the vehicle because the policy language provides for payment if insured should be killed while driving a "private automobile of pleasure car design." The question is, appellant argues, whether the Lucas pickup truck was an "automobile of pleasure car design."

Appellee insists that under the terms of the "Non-occupational Vehicle Accident Benefit" provision of the policy the primary risk appellant insured against was accidental death resulting from injuries sus-

tained in a vehicle not being used at the time as an occupational vehicle. Appellee argues that the benefit would not be payable if the insured had been fatally injured while in a passenger car being used at the time of the accident in carrying out activities of the insured's occupation.

"There can be no question," appellee urges, "under the evidence in this record that the 1967 Ford pickup was used and designed for pleasure use," and that if appellant had intended to exclude coverage for injuries sustained "in vehicles such as pickups, it would have been a simple procedure to write such an exclusion into the policy."

The record shows that the insured purchased a 1967 Ford half-ton pickup in November, 1967 prior to the fatal accident in June, 1968. The pickup was the only automobile owned by the Lucas family and the vehicle was used solely as a family automobile. The pickup was not used for business or occupational purposes and was fitted with a six-foot cargo bed which was the shortest available.

Mrs. Lucas testified that she and her husband decided to buy the pickup because her parents lived on the Guadalupe River and in order to get to the river it was necessary to travel over "a very rough road." The Lucas family spent their spare time fishing and hunting. Mrs. Lucas testified, "We could get to the river easier with the pickup than with the car."

The Lucas family, consisting of the insured and his wife and their three small boys, were in the pickup going to visit her parents, and "to spend Saturday and Sunday afternoon on the river," when the collision occurred in which Lucas was killed.

The language of the insurance policy with which we are concerned is the statement that the company agrees to pay an additional benefit if proof shows that " * * * accidental death was sustained * * * while driving * * * *a private automobile of pleasure car design (includ-*ing station wagon or similar body types) not in use for commercial or occupational purposes by such person * * * *"* (Emphasis added).

In Pennell v. United Insurance Company, 150 Tex. 541, 243 S.W.2d 572 (1951), the Supreme Court of Texas, with four justices dissenting, held that a jeep was not within the coverage of an insurance policy providing payment of double indemnity when injury was sustained by the insured "while driving or riding within any private passenger automobile exclusively of the pleasure car type." The Supreme Court held that the word "exclusively" did not render the description ambiguous, but gave emphasis to the description as an automobile of the pleasure car type.

"We believe," the Court declared, "the words clearly mean that the double indemnity provision applies only to automobiles that are constructed and intended to be used exclusively for pleasure, and does not apply to automobiles constructed and intended to be used for freight carrying or agricultural or industrial purposes, and does not apply to automobiles constructed and intended to be used both for pleasure and for freight carrying or agricultural or industrial purposes."

The Court pointed out that no issue of fact was raised as to the design and construction of jeeps and the purposes for which they were sold and intended to be used. "The testimony and the photographs of the jeep in the record," the Court observed, "show that it is a rugged, uncouth vehicle without beauty of line or body, and with no suggestion of comfort, and obviously intended for hard service rather than for pleasure."

The Supreme Court agreed with the holding of the court of civil appeals in that case that "as a matter of law the jeep involved here is not a private passenger automobile 'exclusively of the pleasure car type.' "

Whether a pickup truck was a "private passenger automobile" within an exclusion

of a policy was held to be an issue of material fact requiring reversal of summary judgment in Johnson v. Home Indemnity Company, 401 S.W.2d 871 (Tex.Civ.App., Texarkana, 1966, writ ref. n. r. e.). The policy defined "private passenger automobile" as a "four-wheel private passenger, station wagon or jeep type automobile."

In that case the Texarkana Court cited Mutual Benefit Health and Accident Association v. Hudman, Tex.Civ.App., 385 S.W.2d 509, decided by this Court in 1964, in which it was held that a one-half ton pickup truck used for transporting passengers and goods was a "passenger automobile" within the meaning of the policy. The Hudman case was reversed by the Supreme Court on other provisions of the policy, and no mention was made of this Court's holding that the pickup was a "private passenger automobile." 398 S.W. 2d 110 (Tex.Sup.Ct., 1965).

The language employed in the policy before us does not expressly rule out a pickup as "a private automobile of pleasure car design." The clause contained in parentheses, "including station wagon or similar body types," enlarges rather than limits the phrase "private automobile of pleasure car design." The word "including," although susceptible of different shades of meaning, is generally used as a term of enlargement and not as a term of limitation. Peerless Carbon Black Co. v. Sheppard, 113 S.W. 2d 996 (Tex.Civ.App., Austin, 1938, writ ref.); El Paso Electric Co. v. Safeway Stores, 257 S.W.2d 502 (Tex.Civ.App., El Paso, 1953, writ ref., n. r. e.). As used in the policy, the word "including" is illustrative of the types of vehicles to be included within the coverage of the contract. Philtex Chemical Co. v. Sheppard, 219 S.W.2d 1010 (Tex.Civ.App., Austin, 1949, writ ref. n. r. e.); Peerless Carbon Black Co. v. Sheppard, supra. The Supreme Court of Missouri has held that when used in connection with specified objects, the word "include" implies that there may be other objects not mentioned. St. Louis County v.

State Highway Commission, 409 S.W.2d 149 (Mo.Sup.Ct., 1966).

The rule that "include" or "including" enlarges rather than limits has been applied by Texas courts to legislative acts, municipal ordinances, wills, and insurance policies. Peerless Carbon Black Co. v. Sheppard, supra; Philtex Chemical Co. v. Sheppard, supra; El Paso Electric Co. v. Safeway Stores, supra; Houston Bank and Trust Co. v. Lansdowne, 201 S.W.2d 834 (Tex.Civ.App., Galveston, 1947, writ ref n. r. e.); Alexander v. Firemen's Insurance Company, 317 S.W.2d 752 (Tex. Civ.App., Waco, 1958, no writ).

The record in this case shows that the Lucas vehicle was a Ford one-half ton pickup, bought for use as a family automobile, and used only for that purpose by the insured and his family. It is conceded by appellant insurance company that at the time of the accident the pickup was not in use for commercial or occupational purposes. Both in design and in the use to which the vehicle was put the pickup accommodated both passengers and cargo. The cargo space, as heretofore noted, was the smallest available for pickups.

R. C. Armstrong, shown to have been a dealer in Ford vehicles for thirty-one years, testified by deposition that a pickup may have automatic transmission, air conditioning, power steering, and "everything that you have in a passenger car." Armstrong testified that pickups are used for pleasure purposes in the same manner as passenger cars. In his experience, Armstrong said, he sold pickups to buyers who drove them "just for the economy," as a personal car, and not using the vehicle in any way for business. "They want transportation," Armstrong stated, "and they buy a pickup to ride in."

When asked to state some of the uses common to both station wagons and light pickups, Armstrong testified that both vehicles provide passenger as well as cargo space, although the station wagon "will haul more people, and it is flexible on the

seating arrangement." Speaking of the station wagon, Armstrong said, "You can either make it a cargo, or you can make—a limited cargo." He added that cargo could be stacked higher in a pickup because with a station wagon "you are limited on account of the roof." Armstrong concluded that both types of vehicles serve a dual purpose of carrying both passengers and cargo, although "you are limited on the passengers in the pickup compared to the station wagon."

On cross examination Armstrong was asked whether he would take a prospective buyer, asking to see an automobile of pleasure car design, "to the lot where the pickup trucks were." His reply was, "No. I would ask him what he wanted, what kind of pleasure, and then I would take him where it was."

This inquiry was pursued further in the following examination:

"Q All right. Now, if he would ask you—he wanted to see an automobile of pleasure car design, would you take him—say, if you didn't ask him any more questions about what specifically he was talking about, would you take him to the regular showroom where you have the two-seat and four-seat automobiles, other than the pickup trucks?

A Now, on 'pleasure,' do you mean to go fishing or to go to football games, or what pleasure?

Q Well, if he just asked you for an automobile of a pleasure car design? I guess that's what I am limited to asking you.

A Well, a pickup is not generally known as a pleasure design, but it is used for that. It has a wider range than these others.

Q But as far as the design itself, it is not known as a pleasure car automobile?

A No. It is more of a commercial car."

We have referred to the cases we find and that have been cited in the briefs in which Texas courts have passed on provisions of insurance policies similar to the terms of the policy before us. We have also examined decisions of courts in other states and we are aware that these authorities are not in complete harmony in determining whether a pickup is an automobile of "pleasure car type." We consider decisions of the supreme courts of Tennessee and Missouri more in harmony, for example, with our conclusions than decisions such as one by the Supreme Court of North Carolina. The cases we refer to are Aetna Life Insurance Company v. Bidwell, 192 Tenn. 627, 241 S.W.2d 595 (1951); English v. Old American Insurance Company, 426 S.W.2d 33 (Mo.Sup.Ct., 1968); Marshall v. Washington National Insurance Company, 246 N.C. 447, 98 S.E.2d 345 (1957).

The trial court made no findings of fact or conclusions of law and apparently none was requested. We must presume the trial court found the facts in a manner to support the judgment. The court's finding implicit in the judgment is that the pickup driven by insured at the time of his death was an automobile of pleasure car design, not being used for commercial or occupational purposes, within the meaning of the terms of the insurance policy. We conclude that the evidence is sufficient to establish that the Lucas pickup was an automobile of pleasure car design and one designed and used for pleasure. It is undisputed that the pickup was not being used for commercial or occupational purposes, although it was designed for transporting limited cargoes.

The judgment of the trial court is affirmed.

Affirmed.