[No. 3332.   Feb. 12, 1930.]

ALBUQUERQUE FOUNDRY & MACHINE WORKS v. STONE.

[286 Pac. 157.]

T. J. Mabry, of Albuquerque, for appellant.

Joseph Gill, of Albuquerque, for appellee.

T. J. Mabry, of Albuquerque, for appellant.

Joseph Gill, of Albuquerque, for appellee.

OPINION OF THE COURT

SIMMS, J.

Stone owned an oil and gas lease on a section of land belonging to another. After drilling a considerable distance, he lost certain tools in the well and suspended operations. Olney claimed to be an expert in fishing for and recovering lost drilling tools and equipment and agreed with Stone to recover the articles from the well for $2,500, if he succeeded, and nothing if he failed. Stone consented to this and permitted his drilling machinery on the site to be used in the effort. Olney hired labor and had the Albuquerque Foundry & Machine Works make for him certain appliances, such as a spear, jars, and a jaw to be used in the fishing, and got the foundry to cut, thread, and weld certain detachable tools and parts of the equipment during the work. Olney failed to remove the lost tools from the well and gave up the attempt, departing without

paying either the laborers or the foundry. All filed liens under our Mechanics' Lien Statute. Section 3319, Code 1915. Subsequently the foundry acquired by assignment the two laborers' liens and sued to foreclose. From a judgment holding that the drilling outfit, derrick, well, and land, to the extent of Stone's interest therein, were subject to lien and foreclosing the same, Stone appeals.

The first question presented is whether or not an incomplete oil well, before discovery of oil or gas, is subject to a lien under our statute. Section 3319, Code of 1915, reads:

"Every person performing labor upon, or furnishing materials to be used in the construction, alteration or repair of any mining claim, building, wharf, bridge, ditch, flume, tunnel, fence, machinery * * * or any other structure * * * has a lien upon the same for the work or labor done or materials furnished. * * *"

Is an oil well a "structure"? We think so. Considering the evident intention of the Legislature to protect laborers and materialmen against loss, it would seem absurd to say that one who labors on a mine, driving a tunnel or sinking a vertical shaft in search of gold or silver, is protected, and yet another, who labors on a well or hole in the ground, sunk to discover another mineral called oil, is not protected. We are accustomed to think of a "structure" as something above ground, in the nature of a building, but this is not necessarily the only meaning of the word. As it is used in our statute, the term is broad and should be construed in connection with the preceding terms which extend the subjects of the statute over a wide range. The authorities are not all in accord in holding a well to be a "structure," but the peculiar wording of our statute leads us to conclude that it should be so construed. Ann. Cas. 1912B, page 11, note. See also Kanawha Oil Co. v. Wenner, 71 W. Va. 477, 76 S. E. 893, 43 L. R. A. (N. S.) 559.

Appellant contends that an oil lease is a mere license to explore, and, prior to discovery, is not an interest in land nor sufficient to sustain a mechanic's lien. But the question is not before us. Stone testified that he owned an oil and gas lease. Neither side introduced it. Its terms are nowhere shown by the record. It may have

been the usual commercial form, or another and very different one, which gave the lessee a definite term for years. We cannot put the trial court in error on such a state of the record. The decree only sought to subject Stone's interest, whatever it was, to sale, and the owner of the land was not a party to the action.

Appellant complains that the court ordered foreclosure as to Stone's interest in the entire section of land without limiting the amount to that necessary for the convenient use of the well. Section 3321, Code 1915. He does not seem to have urged the trial court to limit the amount of land to a less acreage and cannot here complain in that regard. Ford v. Springer Land Ass'n., 8 N. M. 37, 41 P. 541.

We have no doubt that the laborers who worked in trying to remove the tools from the well were engaged in an effort to "repair" a "structure" within the terms of our statute. As to their claims, the foundry, as assignee, was entitled to claim and enforce a lien upon Stone's rights in the well and the leasehold.

The next question is whether the derrick, drilling machinery, and tools were subject to a mechanic's lien under our statute. In the cases of Post v. Miles, 7 N. M. 328, 34 P. 586, and Ripley v. Cochiti Gold Mining Co., 12 N. M. 188, 76 P. 285, we have recognized the general rule that the test for determining whether a given piece of machinery is subject to such a lien is the intention that it shall be permanently affixed to the realty so as to become a fixture. And in Jones-Noland Drilling Co. v. Bixby, 34 N. M. 413, 282 P. 382, we held that where the parties, by the express terms of the lease, agreed that the machinery and improvements should not become fixtures, the effect was to retain to such machinery and improvements their character as personalty. Coming now to the facts of the case at bar, there is no testimony showing what the lease contained as to the right to remove the derrick or the drilling machinery. As to the derrick, the parties have conceded that it is a fixture designed and intended to remain upon the land. We therefore are not called upon to determine this question. But as to the

drilling machinery and tools, the evidence clearly shows that such an outfit is not intended to become a fixture, but is temporarily upon the site, and when the well is finished or abandoned it is the custom and practice to move the drilling machinery away for use elsewhere. We fail to see any distinction between the facts of this case and one where a water-well drilling outfit or a threshing machine is brought temporarily upon land to be used for a particular job and later removed. We conclude that the drilling machinery and tools were not fixtures but movable personalty, and are not subject to a mechanic's lien under our statute. Ripley v. Cochiti Gold Mining Co., supra.

The only remaining question is as to the foundry's claim of lien upon the well, derrick, and leasehold. All of the charges included in its bill were for making or repairing detachable fishing tools. It may have had an artisan's lien, which would have justified it in holding possession until paid. But we see no difference in its position under our Mechanic's Lien Law as to the well, derrick, and leasehold, from that of a hardware dealer who sells a carpenter a hammer or a saw which he uses in working on a house. The tool is not intended for permanent incorporation in the structure and furnishes no basis for a lien thereon. Rockel on Mechanic's Liens, par. 18; Basshor v. Baltimore, etc., Railroad, 65 Md. 99, 3 A. 285; Gordon H. Co. v. San Francisco, etc., R. R. Co., 86 Cal. 620, 25 P. 125; Bloom on Mechanic's Liens, par. 89.

We conclude that in so far as the judgment of the lower court recognized the right of the laborers to claim and enforce a lien upon Stone's interest in the well, derrick, and leasehold, it was correct, but so much of the judgment as recognizes and forecloses the lien of the laborers upon the drilling outfit and adjudges a lien in favor of the foundry's claim upon anything was erroneous. Accordingly the judgment is reversed, and the cause remanded for entry of judgment in conformity with this opinion. It is so ordered.

BICKLEY, C. J., and CATRON, J., concur.

PARKER and WATSON, JJ., did not participate.