102 P.2d 664

**DYSART v. YOUNGBLOOD.**

No. 4466.

Supreme Court of New Mexico.

April 30, 1940.

M. J. McGuinness, of Albuquerque, for appellant.

Harris K. Lyle, of Gallup, for appellee.

MABRY, Justice.

Suit was filed by appellee Youngblood to foreclose a mechanics' lien against the property of appellant Dysart, consisting of a "dry" water well and the land upon which the same was located.

The cause was tried to the court, judgment given appellee and a lien established upon the well, designated as a "structure" within the contemplation of the statute, and the section of land upon which it was located. The theory upon which the land was included was that it was needed for the "convenient use and occupation" of the well. Mrs. Dysart, defendant below, brings this appeal.

Appellant defended in the action on the ground that appellee breached his contract to drill, case and finish the well, and that she was not indebted to him in any sum, particularly not for the sum claimed. She disputed the right of appellee to claim and establish a lien upon the well or the land surrounding it for the reason that the lien law does not give such right of lien upon a water well—that it does not come within the term "structure" as contended for by appellee.

The trial court found appellee was employed by appellant to drill the well in question. It was found that this was to be a water well unless oil might be struck at the depth to which parties had contracted the well should be drilled; that appellant did not breach his contract, that his claim in the sum allowed was due and unpaid, and that he should have a lien for his labor and the material he employed in the undertaking. There is substantial evidence to support the findings that the account was owing and unpaid, and, upon that point, we inquire no further.

The two remaining questions of importance are: (a) Is a water well a "structure" within the meaning of our statute? (Sec. 82-202, N.M.Comp.St. of 1929) and (b): Did the court correctly determine the "use and occupation" requirement in fixing the lien to cover the entire section of land upon which the well was drilled?

The statute under which the lien is claimed, Sec. 82-202, supra, provides: "Every person performing labor upon, or furnishing materials to be used in the construction, alteration or repair of any mining claim, building, wharf, bridge, ditch, flume, tunnel, fence, machinery, railroad, wagon road or aqueduct to create hydraulic power, or any other structure, or who performs labor in any mining claim, has a lien upon the same for the work or labor done or materials furnished by each respectively, whether done or furnished at the instance of the owner of the building or other improvement, or his agent, and every contractor, sub-contractor, architect, builder, or other person having charge of any mining, or of the construction, alteration or repair, either in whole or in part, of any building or other improvement, as aforesaid, shall be held to be the agent of the owner for the purposes of this article."

Appellee cites and relies principally upon Albuquerque Foundry & Machine Works

v. Stone, 34 N.M. 540, 286 P. 157, for authority for his position that a water well is a "structure" made lienable by the New Mexico Act, and upon Ford v. Springer Land Association, 8 N.M. 37, 41 P. 541, for support for its claim that the land subjected to the lien was properly included.

In holding the lien statute applied to exploration work in drilling for oil we observed in the Albuquerque Foundry & Machine Works case, supra [34 N.M. 540, 286 P. 158]: "Is an oil well a 'structure'? We think so. Considering the evident intention of the Legislature to protect laborers and materialmen against loss,[1] it would seem absurd to say that one who labors on a mine, driving a tunnel or sinking a vertical shaft in search of gold or silver, is protected, and yet another, who labors on a well or hole in the ground, sunk to discover another mineral called oil, is not protected. We are accustomed to think of a 'structure' as something above ground, in the nature of a building, but this is not necessarily the only meaning of the word. As it is used in our statute, the term is broad and should be construed in connection with the preceding terms which extend the subjects of the statute over a wide range. The authorities are not all in accord in holding a well to be a 'structure,' but the peculiar wording of our statute leads us to conclude that it should be so construed."

It is conceded that there is a clear division of authority upon the question where statutes like our own are involved. Each of the parties hereto claim for their respective sides the weight and logic of authority. We do not undertake to assemble and re-appraise the cases relied upon for numbers or reasoning. It is obvious that if a water well is to come within the definition of our statute it is because of the reliance which may be placed upon the word "structure". Neither oil or water wells are specifically named. Appellant cites considerable authority to sustain her claim that a water well is not a "structure". Many of these cases could have been relied upon to show that a. dry hole drilled in exploring for oil would likewise not come within that definition. But, we have held that a well or hole in the ground sunk to discover oil or other mineral is a structure within the meaning of our statute. The cases cited by appellant do not persuade that there should be a distinction made between a hole in the ground made in exploring for water and the same character of a hole in the ground made when exploring for oil, once we have held that either one of the two is to be deemed a structure. The cases from Nebraska and Arkansas, cited and relied upon by appellant in this connection, may be distinguished. In Nebraska, the statute uses the word "appurtenances", instead of "structure". The Iowa court in Hoppes v. Baie, 105 Iowa, 648, 75 N.W. 495, suggests the statutory difference is sufficient to distinguish the Nebraska holdings. Likewise, the Arkansas act does not use the word "structure" in this connection, but makes subject to the lien "all the right and

title of the defendant to the land on which any building, tenement, or edifice shall be erected * * *." See Guise v. Oliver, 51 Ark. 356, 11 S.W. 515.

While the courts are not at all unanimous, there is ample authority to support the holding in the Albuquerque Foundry case, supra, to which we are now committed.

If the word "structure" as used in our statute means one kind of a well, an oil well, there is no good reason to say that it does not mean the other kind—a water well.

Water wells are quite as essential to the improvement and development of land in this portion of the West particularly, as most any structure or improvement that comes readily to mind. Water is indispensable in the work of exploring for oil in the area in question. Where there is no surface water supply available it is the one absolute pre-requisite to oil field exploitation. Oil, like gold and silver, is valuable; but water, under the circumstances here presented, for any use to which the land could be put, must be had.

Counsel for appellee has suggested, and quite appropriately, it seems to us, that the language above quoted from the Albuquerque Foundry case might, by paraphrasing slightly, fit this case exactly. Had a case of this character been before us there, impelled by the same thought of weighing logic against inconsistency, we could have said: "Is a water well a structure? We think so. Considering the evident intention of the legislature to protect laborers and material men from loss, it would seem absurd that one who labors on a ditch to convey water for irrigation purposes is protected and yet another who labors in a well or hole in the ground to discover and procure water for irrigation is not protected."

We hold that a water well comes within the definition of the statute and is therefore subject to the lien. It is suggested by appellee that even a strict interpretation of the statute would achieve this result. We are committed to the doctrine that the mechanics' lien law, though in derogation of the common law, is remedial in its nature, and is to have a liberal construction. Our earliest case upon the question (Finane v. Las Vegas Hotel & Improvement Co., 3 N.M. (Gild.) 411, 5 P. 725) did not so hold, but this was overruled in Ford v. Springer, supra, and the latter case was thereafter followed in Lyons v. Howard et al., 16 N. M. 327, 117 P. 842, and others, clearly supporting this view. Gaastra, Gladding & Johnson v. Bishop's Lodge Co., 35 N.M. 396, 299 P. 347; Hot Springs Plumbing & Heating Co. v. Wallace, 38 N.M. 3, 27 P.2d 984.

We are next called upon to determine whether there was error in the trial court's action in permitting the lien to attach to the entire section of land upon which was drilled the well. An examination of the record upon that point discloses that there was no error here. The lien act, as it

applies to this feature of the case, reads: "The land upon which any building, improvement, or structure is constructed, together with a convenient space about the same, or so much as may be required for the convenient use and occupation thereof, to be determined by the court on rendering judgment, is also subject to the lien, if at the commencement of the work, or of the furnishing the materials for the same, the land belonged to the person who caused said building, improvement or structure to be constructed, altered or repaired, but if such person owned less than a fee simple estate in such land, then only his interest therein is subject to such lien." Sec. 82-204, N.M.Comp.St.1929.

We said in construing the terms employed in the above section, in Ford v. Springer Land Association, supra [8 N.M. 37, 41 P. 548]: "All the proofs go to show that the land is appurtenant to, and to be benefited by, the ditch. The term 'so much as may be required for the convenient use and occupancy thereof' means all the land benefited, and the value of which is increased or enhanced by the improvements actually made upon the land appurtenant and adjacent thereto, and for which such improvements are made at the instance, knowledge, or consent of the owner or reputed owner thereof."

■ There are findings of fact supported by substantial evidence to bring this case within the doctrine of the Ford case. There is evidence that on the section in question there was maintained a camp house, barn, garage, blacksmith shop, and cook-house; that this was only grazing land, adapted to and used only for the grazing of cattle, though at the particular time it appears but few cattle were grazing thereupon. It is disclosed by the evidence, also, that the water which it was hoped could be developed would be used also for the next project, in further exploring for oil, which project would probably have been at some other location on this or an adjoining section of land. There is therefore substantial evidence to show that all of the section was required for the "convenient use and occupation" of the structure, the water well, for one purpose or another. See Western Well Works v. California Farms Co., 60 Cal.App. 749, 214 P. 491.

■ The fact that the well was a dry one cannot affect the question. The well involved in the Albuquerque Foundry case was also a "dry hole", but for whatever security these dry holes of either type can afford the creditor and claimant who has expended labor or material in the endeavor to reach water or oil, it is available.

■ It makes no difference, also, that the improvement was abandoned, and therefore worthless as adding value to the land. The lien obtains for what it is worth, if the abandonment occurred through no fault of the lien claimant. Albuquerque Lumber Co. v. Montevista Co., 39 N.M. 6, 38 P.2d 77.

■ A water well, sunk out in the open cattle country, where its only use would

be for stock-water purposes, if oil development should fail, and where the surface of the land would likely be used for such purposes even with oil development in progress, could not be said to be of much, if any, value with less than a section of surrounding land. The statute lodges with the trial court a wide discretion in determining the extent of the land "about" the structure which may be said to be reasonably required for the "convenient use and occupation" of the improvement. The restriction is not limited to land necessarily needed, as it might have been, but to that required for the convenient use and occupation of the structure, rather. See Western Well Works v. California Farms Co., supra, and Springer Land Association v. Ford, supra.

In the Ford case, supra, we held that a lien which would attach to the ditches of an irrigation system would likewise include the land served and benefited, and upheld the trial court's decree subjecting some twenty-two thousand acres of land under the ditches to the lien for labor and material used in the construction of the ditch system.

Justice Laughlin, the writer of this early opinion, (1895) speaking of the public policy behind this statute then under consideration, said: "To hold that this lien attaches only to the ditch system, 26 miles long and 60 feet wide, would be, in effect, to render the security for the payment of appellee's demands practically valueless, and to defeat the very spirit and intent of the law on which he had the right to rely for protection to secure payment for his labor. When the legislature enacted the mechanic's lien law it meant to provide security, and to say to the laborer, either skilled or unskilled, and to the material man, when he improves property with his skill, labor, or material, that all the property so improved in value shall be held by him as security until his demands are paid in the manner provided by the statutes."

Lien statutes are bottomed, of course, upon the general proposition that an endeavor was made to achieve benefits to the realty upon which the structure was placed. It would be a valueless security for the lien claimant under the circumstances here, if he would have only the water well, even one actually producing water, if he be restricted to a substantially small area surrounding the well. It becomes a question of fact for the court to say what area of land "about" the structure is required for the convenient use thereof. We will not disturb the finding, or "determination" by the trial court that the entire section was so required, in view of the substantial evidence present in support of such determination.

All error assigned is without merit and the judgment will be affirmed, and, it is so ordered.

BICKLEY, C. J., and BRICE and SADLER, JJ., concur.

ZINN, J., did not participate.