[No. 30586. Department Two. November 16, 1948.]

KNUTE E. JELLUM *et al.*, *Appellants*, v. NORMANNA LODGE No. 3, SONS OF NORWAY, INC., *Respondent.*[1]

*Langlie & Todd* (*Richard S. White*, of counsel), for appellants.

*O. D. Anderson* and *J. P. Hunter*, for respondent.

SCHWELLENBACH, J.—This is an appeal from a judgment dismissing an action for damages, tried to a jury, upon a motion challenging the sufficiency of the evidence, after the plaintiffs and defendant had presented their entire case.

The defendant is a Washington corporation owning and operating a building in Everett, known as "Normanna Hall." Defendant had just completed this new hall and had sent invitations to members of Sons of Norway lodges and their auxiliaries, in nearby cities, to attend its "Grand Opening" to be held April 19, 1947.

[1] Reported in 199 P. (2d) 108.

Plaintiffs, who reside in Seattle, decided to attend, and drove to Everett with two lady guests, arriving at the hall about 1:10 p. m. The invitations listed the following program: open house, 1:00 to 4:00 p. m.; dedication program, 2:00 p. m.; banquet ($2.50) 6:00 p. m.; dancing, 10:00 p. m. to 1:00 a. m. Upon arrival, they were met by a reception committee. Plaintiffs bought tickets for the banquet and were then introduced to a Mrs. Paulsen, who acted as their hostess. Mrs. Paulsen first took them upstairs to the auditorium. At the front of the auditorium was the stage, at both the extreme right and left of which were five wooden steps leading from the auditorium floor to the stage. The steps were of wood, with no cleats on them. The risers on the steps were seven and one-quarter inches; the width, thirteen inches; and the length, sixty-three inches. The floor of the auditorium had been waxed. The steps had been varnished; were shiny, but not slippery.

After viewing the auditorium for about ten minutes, the party went up the right-hand steps to the stage. They walked along the back of the stage, examining the lighting, props, etc., and started down the steps on the opposite side. Mr. Jellum and his two guests were in the lead, followed by Mrs. Jellum, who was next to the wall, and Mrs. Paulsen, who was beside her, and about in the middle of the steps. Mrs. Jellum was seventy-two years old. She was wearing shoes with Cuban heels (medium high and quite well-faced). She was carrying her coat on her arm. About the time those ahead reached the bottom of the steps, and while Mrs. Jellum was on the third step, she plunged forward and fell, breaking her leg and sustaining serious injuries. There were no handrails on the steps, and she testified that she always used handrails when they were present, in going up and down stairs.

Plaintiffs alleged that the negligence, which was the proximate cause of the injuries, consisted of the following: (a) in failing to provide the stairway with handrails; (b) in failing to keep the stairway in a safe condition; (c) in failing to correct the dangerously slippery condition of the stairway; (d) in failing to notify plaintiffs, after having

full notice itself of the dangerously slippery condition of the stairway; (e) in placing wax, oil, or some other slippery agent upon the stairway in excessive amounts; (f) and in failing to post a notice warning plaintiffs of the dangerous condition of the stairway.

This was all denied by the defendant, which alleged affirmatively that, without admitting any defects, if there were any, defendant had no knowledge of them, or, in the exercise of reasonable care had no means of acquiring knowledge. Defendant further alleged affirmatively that Mrs. Jellum's injuries were proximately caused by her own contributory negligence, in that the defects, if any, were as apparent to her as to defendant, and that she failed to use reasonable care for her own safety; that she had actual knowledge of the existence of the stairway, together with its location, manner of construction, width, pitch, height, and surfacing, and she failed to look where she was going; that she assumed any and all risks attendant upon the use of the stairway.

Plaintiffs alleged, in paragraph No. 5 of their complaint, that at all times since March 29, 1947, there has been in full force and effect in Everett, ordinance No. 3114, regulating the erection, construction, etc. of buildings in the city of Everett and repealing ordinance No. 2726. This was denied by general denial.

Nine days before trial, plaintiffs served notice on defendant that they would move to amend paragraph No. 5 of their complaint to read that, at all times between June 9, 1937, and March 29, 1947, there was in full force and effect in the city of Everett, ordinance No. 2726, regulating the erection, construction, etc. of buildings in Everett. At the trial, this motion was granted.

Defendant moved to strike paragraph No. 5 as being redundant and immaterial because it was alleged that ordinance No. 2726 was in full force and effect between June 9, 1937, and March 29, 1947, while paragraph No. 4 of the complaint alleged that the accident occurred April 19, 1947, twenty days after the repeal of ordinance No. 2726. The court reserved ruling on this motion to strike. It was

then stipulated that, if the court should permit the trial amendment, the answer and general denial theretofore filed would apply to any new matter admitted and made a part of plaintiffs' complaint.

Section 1 of ordinance No. 3114 provides:

"The 1946 edition of the Uniform Building Code, as prepared by the Pacific Coast Building Officials Conference, otherwise known as the 1946 edition of the Pacific Coast Conference Uniform Building Code, except Section 203, Chapter 2, is hereby adopted as the building code and ordinance of the City of Everett, (there being three (3) copies of said building code on file with the City Clerk of the City of Everett) and such code by reference is hereby made a part of this ordinance as though fully set forth herein."

Section 1 of ordinance No. 2726 provides:

"The 1937 edition of the Uniform Building Code as prepared by the Pacific Coast Building Officials Conference, otherwise known as the 1937 edition of the Pacific Coast Conference Uniform Building Code, together with all subsequent editions or amendments of said Code, and relating to the erection, construction, enlargement, alteration, repair, demolishing, conversion, occupancy, equipment, use, height, area and maintenance of buildings and/or structures in the City of Everett, is hereby adopted as the building code or ordinance of the City of Everett, (there being Three (3) copies of said building code on file with the City Clerk of the City of Everett) and such code by reference is hereby made a part of this ordinance as though fully set forth herein, and the several provisions of said code, as now in effect, and all amendments thereto and sub-editions thereto and printed and filed with the City Clerk of the City of Everett shall be considered and accepted as amendments and additions to said code without the necessity of further adoption of such amendments or additions by the City of Everett, except that said code is amended as to fees as provided in this ordinance."

When ordinance No. 2726 was offered in evidence, it was objected to on the grounds that it was not properly enacted in accordance with the charter provisions of the city of Everett; that it was unconstitutional; and that it was repealed prior to the date of the injury.

We do not find it necessary to determine the consti-

tutionality of ordinance No. 2726. If respondent were not required, under the ordinance, to maintain handrails on the steps in question, its constitutionality will not be inquired into. See 11 Am. Jur. 720, Constitutional Law, § 93.

Appellants contend that respondent violated the positive requirements of § 3305 of the uniform building code of 1937, providing for handrails on all stairways, and that such violation constituted negligence *per se*. Section 3305 provides:

"All stairways shall have walls or well secured balustrades or guards on each side and handrails shall be placed on at least one side of every stairway and stairways exceeding forty-four inches (44″) in width shall have handrails placed on each side. Stairways over seven feet (7′) wide shall be provided with one or more continuous intermediate handrails substantially supported and the number and position of intermediate handrails shall be such that there is not more than sixty-six inches (66″) between adjacent handrails."

Under chapter 39, *Stages and Platforms*, we find § 3907, as follows:

"Not less than one exit two feet and six inches (2′ 6″) wide shall be provided from each side of the stage opening directly or by means of a passageway not less than three feet (3″) in width to a street or exit court. An exit stair not less than two feet six inches (2′ 6″) wide shall be provided for egress from each fly gallery. Each tier of dressing rooms shall be provided with at least two means of egress each not less than two feet six inches (2′ 6″) wide and all such stairs shall be constructed as specified in Chapter 33. The stairs required in this sub-section need not be enclosed."

Chapter 33 is entitled *Stairs, Ramps and Smokeproof Towers*. Section 3301 thereunder provides that all exits shall comply with the requirements specified for a stairway, ramp, or smokeproof tower. Section 3302 provides that stairways and intermediate landings shall continue in width along the direction of exit travel. Section 3303 provides that all stairways shall lead to the street directly or by means of a yard, court or fire-resistive passageway, and

that all exits shall be arranged to make clear the direction of egress to the exterior of the building. Section 3304 provides that doors shall not open immediately on a flight of stairs, but on a landing at least equal to the width of the door, and that doors giving access to stairways shall swing with the direction of exit travel. Section 3305 has been heretofore quoted in full. Section 3306 provides that every stairway or other means of exit into corridors and passageways appurtenant thereto, shall be provided with an adequate system of lighting.

An examination of chapter 33, together with all other applicable provisions of the code, convinces us that the only stairways referred to are exit stairways.

Webster's International Dictionary describes a stairway as, "a flight of stairs, or steps; a staircase"; staircase as, "a flight of stairs with their supporting framework, casing, balusters, etc."; and flight as, "a series of steps or stairs reaching from one landing to another."

█ We hold, therefore, that the steps in question did not constitute a stairway within the meaning of the building code; that respondent was not required, under the ordinance, to place handrails on them; and its failure to so place handrails did not constitute negligence *per se*.

█ We now come to the question of whether or not there was any common-law negligence on the part of respondent. There was no positive duty to place handrails. The auditorium was well lighted. The steps were of sound construction. They were of proper and reasonable height, width, and depth. They could not, by any stretch of the imagination, be considered a trap. There was no conflict of testimony which would warrant the submission by the trial court to the jury the question as to whether or not the steps were slippery. The fall of appellant wife was the result of an unfortunate accident, not due in any respect to the negligence of the respondent.

The judgment is affirmed.

MALLERY, C. J., ROBINSON, SIMPSON, and HILL, JJ., concur.

_____

December 20, 1948. Petition for rehearing denied.