[No. 38585.    Department Two.    April 6, 1967.]

MARTHA M. REUTER, *Appellant*, v. RHODES INVESTMENT CO., *et al., Respondents,* L. B. MACDONALD *et al., Respondents and Cross-appellants.* *

*Binns, Petrich & Mason,* by *James J. Mason,* for appellant.

*Vincent L. Gadbow* (of *Davies, Pearson, Anderson & Pearson*), for respondent Rhodes Investment Co.

*Reported in 425 P.2d 929.

*Gordon, Sager, Honeywell, Malanca & Peterson,* by *Richard J. Jensen,* for respondents and cross-appellants and for respondent City of Tacoma.

DONWORTH, J.—This action was brought against respondents Henry A. Rhodes, Inc., MacDonald Building Co., and the City of Tacoma to recover damages for personal injuries sustained in the manner described below. The trial court dismissed the complaint as to defendants Rhodes and the city. After trial, a jury verdict was returned in favor of plaintiff against defendant MacDonald Building Company (herein referred to as respondent) in the amount of $20,000. Thereafter, the trial court denied MacDonald's motion for judgment n.o.v., but granted a new trial on the ground that it had erroneously instructed the jury as to the applicability of the Uniform Building Code § 3305 (g) (referred to as the handrail ordinance). Plaintiff appeals from the order granting a new trial and from the orders dismissing the complaint as against Rhodes and the city.[1] Respondent MacDonald has cross appealed from the denials of his motions to dismiss the complaint made at the close of appellant's case and again at the close of the trial, and from the trial court's denial of his motion for judgment n.o.v.

The principal facts concerning the accident involved are not in serious dispute and may be stated as follows:

A building owned by respondent Henry A. Rhodes, Inc. (herein called Rhodes), located at 902 Broadway in Tacoma, was badly damaged by fire on May 1, 1963, and Rhodes had engaged MacDonald, an independent contrac-

---

[1] At the beginning of her argument, appellant states in her brief that her appeal is taken primarily from the trial court's order granting a new trial, and then continues:

"Secondarily, and only in the contingency that this Court sustains the trial Court's determination as to the handrail ordinance, appellant contends, pursuant to Rule 16 of the Rules on Appeal, that on a new trial certain rulings of the trial Court should not be repealed. These consist in its determination (1) that Uniform Building Code § 4406, the lighting ordinance, is inapplicable to the walkway here involved; (2) that defendant Henry A. Rhodes, Inc. is as a matter of law free from liability; and (3) that Defendant City of Tacoma is as a matter of law free from liability."

tor, to demolish the building. MacDonald applied for and received from the city a permit to barricade a portion of the abutting street with a temporary wooden walkway. The walkway was constructed in the part of the street ordinarily used by vehicular traffic parallel to the curb line, and consisted of a wooden floor with a 4-foot wall on the street side and an 8-foot wall on the side toward the building site. These walls were supported by 2″ by 4″ upright beams spaced at 2-foot intervals, which were joined to one another by corresponding overhead crossbeams. The walkway was not furnished with artificial lighting of its own or with a roof other than the crossbeams.

At the point where the walkway intersected a pedestrian crosswalk across Broadway, a 60-inch opening was cut in the outside wall to permit ingress and egress, and a wooden step was constructed to allow pedestrians to step up or down to or from the paved street level. This step had two 6-inch risers, and was covered with a grey mineral-surfaced roofing material. There was no handrail, but there were stanchions at each side of the opening.

Shortly after sunset on November 29, 1963, appellant, an elderly lady, left her doctor's office nearby, walked across Ninth Street, and entered the walkway at a point not involved in this litigation. She passed through the walkway to the exit described above, intending to proceed down to the street level and across Broadway on the pedestrian crossing. When the traffic light changed to green, she stepped down, lost her footing and fell. She sustained very serious injuries as the result of her fall.

Appellant first contends that the court erred in granting a new trial on the ground that it had erroneously given instructions Nos. 8 and 8A. The instructions are as follows:

> Instruction No. 8. You are instructed that by a City Ordinance of the City of Tacoma it is required that stairways shall have handrails on each side, except that a stairway 42 inches or less in width may have only one handrail, and it its further required that such handrail shall be placed not less than 30 inches nor more than 34

inches above the treads. For the purpose of such City Ordinance, two or more risers shall constitute a stairway.

Instruction No. 8-A. The violation, if you find there was such a violation, of an ordinance governing the construction of barricades or walkways is negligence as a matter of law.

While the violation of a positive ordinance is negligence, such negligence will not render a defendant liable for damages unless such violation proximately contributed to or proximately caused the injury.

In giving the instructions, it was the opinion of the trial court that Uniform Building Code § 3305 (g), as adopted by ordinance No. 16651 of the city of Tacoma, was applicable to walkways such as that involved in the present case. The granting of a new trial was predicated on the trial court's later view, expressed when granting the motion for new trial, that the section cited above was not applicable to the walkway and that, therefore, the instructions above quoted should not have been given.

The question presented, therefore, is whether this section of the Uniform Building Code is or is not applicable to walkways such as that involved in the present litigation.

With certain amendments and deletions not relevant to the present action, the 1958 edition of the Uniform Building Code was adopted by ordinance No. 16651 as the building code of the city of Tacoma. The code was considered by the trial court in its entirety with the consent of all parties. Volume 1 consists of 364 pages plus an index, and was adopted by the International Conference of Building Officials at its meeting in Los Angeles in 1958.

Chapter 33 of the building code specifies certain standards for occupant loads and egress facilities of buildings including handrail requirements for stairways. Appellant cites § 3301 (b) of the code, which provides that:

Every building shall be provided with exits as required by this Chapter. . . .

Section 3305 (g), concerning which the court instructed the jury in instructions Nos. 8 and 8A provides that:

Stairways shall have handrails on each side, and every stairway more than eighty-eight inches (88″) in width

shall have intermediate handrails dividing the stairway into portions not more than sixty-six inches (66″) in width.

Handrails shall be placed not less than thirty inches (30″)nor more than thirty-four inches (34″) above the nosing of treads, and ends of handrails shall be returned to the wall.

Appellant argues that the walkway was a "building" within the meaning of the code, and therefore § 3305(g) is applicable. Respondent contends that the walkway was not a "building."

Turning to the building code, § 403 defines "building" as:

[A]ny structure built for the support, shelter, or enclosure of persons, animals, chattels, or property of any kind.

We are of the opinion that the definition is sufficiently broad to include the type of structure involved in the present case.

Further, § 1601(d) of the code provides:

Temporary buildings *such as  .  .  .  sheds, canopies, or fences used for the protection of the public around and in conjunction with construction work* may be erected in Fire Zones No. 1 or No. 2 by special permit  .  .  .  . (Italics ours.)

Thus, the code itself, in this section, refers to structures such as that with which we are concerned here as "buildings." We, therefore, hold that the walkway involved in this case is a "building" within the meaning of that term as used in the code.

Respondent contends, however, that, even if the edifice in question is classified as a "building," still § 3305(g), relating to handrails, does not apply to this walkway. Its argument, as we understand it, is based upon § 501 of the code, which provides that:

Every building, whether existing or hereafter erected, shall be classified by the Building Official according to its use or the character of its occupancy, as a building of Group A, B, C, D, E, F, G, H, I, or J, as defined in Chapters 6, 7, 8, 9, 10, 11, 12, 13, 14, and 15, respectively.

Respondent contends that the only occupancy group into which the walkway could be reasonably classified is group J, the requirements of which are set forth in chapter 15 of the code.

Under chapter 15, group J occupancies include:

Division 1. Private garages, sheds, and agricultural buildings when not over one thousand square feet (1000 sq. ft.) in area.

Division 2. Fences over six feet (6') high, tanks, and towers.

Respondent then argues that in each of the other occupancy groups set forth by the code, reference is made to chapter 33 for exit facilities, including stairways. No such reference is made in chapter 15. Therefore, respondent contends, it was not the legislative intent that the stairway requirements of chapter 33 apply to group J occupancies.

We note, however, that, in accord with Part V, § 1701 of the code, all buildings must likewise be classified by type of construction into one of the five types set forth in that chapter. Chapter 15 specifies that group J occupancies shall be one of the types of construction as specified in Part V of the code. We further note that *all* construction types set forth in Part V refer to chapter 33 for stair and handrail requirements. Therefore, we must conclude that group J occupancies are governed, as are all other occupancy groups, by the requirements of chapter 33, at least in those cases where such structures do, in fact, have ingress or egress stairways. *Jellum v. Normanna Lodge,* 31 Wn.2d 846, 199 P.2d 108 (1948), cited by respondent, does not concern ingress and egress stairways, and, therefore, is not controlling.

The further argument is made by respondent that the classification of these structures as "buildings" and application to them of the stairway requirements of chapter 33, also requires the application of the occupant load requirements of chapter 33. Section 3301(c) defines "occupant load" as:

[T]he total number of persons actually occupying a building or portion thereof at any one time, but shall never be

assumed to be less than the result obtained by dividing the floor area by the square feet per occupant set forth in Table No. 33-A for the occupancy housed therein. When the square feet per occupant is not given for a particular occupancy it shall be determined by the Building Official, based on the area given for the occupancy which it most nearly resembles.

Accordingly, respondent contends that since the only category set forth in table 33-A into which this walkway could reasonably fit is "all others" (which category requires 100 square feet per occupant), it would be absurd to hold that this walkway is subject to the provisions of chapter 33.

However, we note that § 3301(c) provides, in part:

When the square feet per occupant is not given for a particular occupancy it shall be determined by the Building Official, based on the area given for the occupancy which it most nearly resembles.

The building official is thus given wide discretion in this regard, and hence respondent's argument that the walkway "must" be classed in the group called "all others" is without merit.

One final argument made by respondent on this point is that walkways, such as the one involved in this case, are covered by chapter 44, and that, since that chapter makes no reference to chapter 33 or to the handrail provisions of the code (§ 3305(g)), those provisions are not applicable to the structure in question.

Chapter 44 is titled "Protection of Pedestrians During Construction or Demolition." Section 4406 of that chapter provides for the type of structure involved in this case. However, we find nothing in the chapter to indicate that it contains the sole requirements for such structures. The chapter makes no provision for stairs or for handrails. However, where ingress or egress stairs are provided for such structures, in our opinion, the stair and handrail requirements of § 3305(g) are applicable.

Our interpretation of the code outlined above is in full accord with the stated purpose of the building code, which is:

[T]o provide minimum standards to safeguard life or limb, health, property, and public welfare by regulating and controlling the design, construction, quality of materials, use and occupancy, location and maintenance of all buildings and structures within the city and certain equipment specifically regulated herein. U.B.C. § 102.

We hold, therefore, that the jury was properly instructed as to § 3305 (g) of the uniform code, and the trial court was in error in granting a new trial on the ground that instructions No. 8 and No. 8A should not have been given.

On its cross appeal, respondent alleges essentially that appellant's complaint should have been dismissed as a matter of law for failure of proof on the issues of negligence and proximate cause.

We note first that the jury was fully and adequately instructed on these issues, and no claim of error is assigned to the court's instructions in this regard.

Appellant testified at the trial that when she fell:

I started to fall and I tried to keep from falling but there was nothing that I could hold on to there, nothing that I could grab to keep from falling.

Respondent cites *Nelson v. Sponberg,* 51 Wn.2d 371, 318 P.2d 951 (1957), in support of his argument that no finding of proximate cause could have been based on the evidence presented in this case. That case, however, is distinguishable.

More appropriate to the present circumstances is *Fay v. Allied Stores Corp.,* 43 Wn.2d 512, 262 P.2d 189 (1953), in which this court stated:

[A]fter reading the record in the case and considering these arguments, we cannot say that the jury could not have found from the evidence that the failure to provide a handrail was a proximate cause of respondent's injury. To our minds, it can be argued, with an equal show of reason, from the evidence, that the failure to provide the handrail caused the injury.

In this respect, there was more than a scintilla of evidence supporting respondent's position on the question of causation, and, since the jury has made its findings on substantial but conflicting evidence and under proper in-

structions . . . the jury's determination is final. *It makes no difference that, as a matter of original determination, we might have decided otherwise had the issues of fact been submitted to us initially.* (Italics ours.) (p. 519)

In *Fay v. Allied Stores Corp., supra,* we also noted that:

[W]e think the matter of respondent's alleged contributory negligence was one properly left to the jury. *Hines v. Neumer,* 42 Wn. (2d) 116, 253 P. (2d) 945. (p. 520)

In the present case, the evidence was submitted to the jury under proper instructions, and we, therefore, cannot substitute our judgment for that of the jury on these factual questions. Respondent's cross-appeal is without merit.

Appellant's two remaining assignments of error were made only in the contingency that this court sustained the trial court's determination as to the handrail ordinance. See footnote 1. In view of the disposition of this case, therefore, those assignments of error need not be discussed.

The order granting a new trial is set aside, and the cause is remanded to the trial court with instructions to enter a judgment on the verdict.

FINLEY, C. J., WEAVER and ROSELLINI, JJ., and BARNETT, J. Pro Tem., concur.

---

July 17, 1967. Petition for rehearing denied.