527 P.2d 1079

**Woodruff J. ANDERSON, Plaintiff-Appellee,**

**v.**

**Donald C. WELSH, d/b/a Thunderbird Mobile Home Park, Defendant-Appellant.**

**No. 1431.**

Court of Appeals of New Mexico.

Oct. 16, 1974.

Hendley, J., specially concurred and filed opinion.

Richard L. Gerding, Tansey, Rose-brough, Roberts & Gerding, P. C., Farmington, for defendant-appellant.

James L. Brown, Benjamin S. Eastburn, Farmington, for plaintiff-appellee.

OPINION

SUTIN, Judge.

Defendant appeals from a judgment for plaintiff arising out of injuries sustained when plaintiff fell from a stile constructed and maintained by defendant.

Defendant presents four points for reversal: (A) defendant was entitled to a directed verdict and judgment N.O.V.; (B) trial court erred in instructing the jury during plaintiff's rebuttal that defendant had been impeached; (C) trial court erred in ruling as a matter of law that the Uniform Building Code of City of Farmington was applicable; (D) trial court erred in instruction on contributory negligence.

(A) *Defendant was not entitled to directed verdict or judgment N.O.V.*

(1) *Facts*

Plaintiff was a tenant of defendant's trailer park. Defendant had erected a

wooden stile going over a fence which surrounded defendant's property. The steps of the stile were made from 4″ x 4″'s and 2″ x 8″'s with a handrail or bannister on each side. The stile was constructed for use of the tenants of defendant's trailer park to eliminate the problem of children having to walk down Main Street in order to get to grade school, but the actual use was not limited to children. It was commonly used by all tenants of the trailer court with the knowledge of the defendant.

Plaintiff was about 55 years of age. Prior to October 29, 1970, the day of the accident, plaintiff had used the stile some 72 times to go back and forth to work. He did not make a detailed inspection of the stile, but he knew it was steep; that the step was a little bit narrow because almost every time he came down the stile, he came down sideways, but he was careful how he went over the stile.

On October 29, 1970, sometime during the noon hour, as plaintiff was coming down the stile, "just one time [he] stepped a little too far out on the step and . . . slipped and fell . . . and when [he] started falling [he] reached out and tried to grab anything [he] could, and the next thing [he] knew [he] was lying there on the steps . . . ."

### (2) *Plaintiff was not contributorily negligent as a matter of law.*

Defendant claims plaintiff was contributorily negligent as a matter of law. The definition of negligence and contributory negligence set forth in U.J.I. 12.1 and 13.1 are yet the rules in negligence cases. Williamson v. Smith, 83 N.M. 336, 491 P.2d 1147 (1971). Rule 13.1 reads as follows:

When I use the expression "contributory negligence", I mean *negligence on the part of the plaintiff* that proximately contributed to cause the alleged damages of which plaintiff complains. [Emphasis added.]

Rule 12.1 reads in part as follows:

An act to be negligent must be one which a reasonably prudent person would foresee as involving an unreasonable risk of injury to himself . . . and which such a person in the exercise of ordinary care would not do.

To hold plaintiff guilty of contributory negligence as a matter of law, we must declare that "reasonable minds" cannot differ that plaintiff foresaw he would involve an unreasonable risk of injury to himself if he walked sideways down the steps of the stile; that this negligent act proximately contributed to cause his alleged damages. Mozert v. Noeding, 76 N.M. 396, 415 P.2d 364 (1966). We speak in terms of "that care which a reasonably prudent person exercises in the management of his own affairs." U.J.I. 12.2, Ordinary Care.

Would "reasonable minds" agree that a man 55 years of age, walking to and from work would use the stile? What are "reasonable minds?" What standards compose a "reasonable mind?" What conduct would these "minds" foresee that a person of ordinary care would or would not do? How can we determine when these "reasonable minds" will differ or agree? The answer is not found in New Mexico. Definitions of "reasonable minds" are not forthcoming.

In Brewer v. Jacobs, 22 F. 217, 229 (C. C.W.D.Tenn.1884), Judge Hammond said:

. . . A *reasonable* mind is a sensible one, fairly judicious in its action, and at least somewhat cautious in reaching its conclusions.

\* \* \* \* \* \*

. . . It is not reasonableness to the plaintiff's mind which is a test of the quality, but reasonableness *as a matter of law*, to be determined, not by the strength of that particular mind, . . . but by the legal test in all such inquiries, here as elsewhere. And this is that belief which would be generally entertained by prudent and cautious minds acting with ordinary or average intelligence in such matters on the facts within the knowledge of the prosecuting plaintiff. [Emphasis by court.]

Prosser, Law of Torts, 4th ed. 207 (1971) describes the particular standard of conduct by which a court or jury determines what the reasonable man would have done under the circumstances. The author says:

. . . Under our system of procedure, *this question is to be determined in all doubtful cases by the jury, because the public insists that its conduct be judged in part by the man in the street rather than by lawyers,* and the jury serves as a shock absorber to cushion the impact of the law. . . .

. . . It is *possible* to say, in many cases, that the conduct of the individual *clearly* has or has not conformed to what the community requires, and that no reasonable judgment could reach a contrary conclusion. . . . [Emphasis added.]

"Doubtful" and "clear" in the mind of the man in the street is the answer in determining whether a plaintiff's conduct is a question of fact for the jury or a question of law for the court.

If we try to determine contributory negligence as a matter of law, based on "reasonable minds," we must place ourselves in the position of the man on the street. Then we place these persons in the steps of the plaintiff to determine whether these "reasonable minds" will agree that the plaintiff is contributorily negligent as a matter of law. This concept falls within the sphere of fiction because we assume as true, something we know to be false or unreal.

A court of review should determine from the facts whether the plaintiff's conduct creates a doubtful or clear question of contributory negligence. If in our minds, the conduct is doubtful, the issue should be submitted to the jury. If it is clear, the issue should be withdrawn from the jury. Courts of review can and have disagreed on whether a plaintiff's conduct is doubtful or clear on the issue of contributory negligence. But each court of review has a duty to see that substantial justice is done as it views the case.

We agree with Proctor v. Waxler, 84 N.M. 361, 365, 503 P.2d 644, 648 (1972), that " . . . in most cases, contributory negligence is almost always a question of fact to be determined at trial, and not one of law."

We conclude it is doubtful whether the conduct of the plaintiff constituted contributory negligence as a matter of law.

Defendant further contends that where a danger is known or obvious, an injured person might reasonably elect whether he should expose himself to the peril or choose a reasonable alternate.

Plaintiff testified that another access to the trailer park was an automobile passway in the front gate about two and one-half blocks from the stile. This front gate led out to East Main Street. Therefore, defendant says, he was entitled to a directed verdict because plaintiff, with knowledge of the condition of the stile, elected to use the stile instead of the automobile passway.

Defendant's contention fails because defendant never indicated in trial or in his brief that the stile was a known or obvious danger either to children for whom it was built, or for tenants like the plaintiff who commonly used it with knowledge of the defendant. The alternate theory is not applicable.

(B) *Trial court did not instruct the jury on impeachment of defendant during plaintiff's rebuttal.*

Defendant testified on direct examination that he was first aware of plaintiff's accident five or six weeks after October 29, 1970. Plaintiff's attorney announced during rebuttal that he intended to call as his last rebuttal witness, either a claims man or agent of defendant's insurance company to impeach defendant's testimony by showing that defendant had reported the accident to the agent on November 2, 1970, some four days after the accident. The court heard objections from both sides. After argument of counsel, the trial court felt that the probative value of the impeachment testimony was outweighed by

the danger of interjecting a question of insurance into the case. The trial court, at the close of all the evidence, orally said to the jury:

Ladies and Gentlemen, you may accept as a fact that the defendant Don C. Welsh knew on November 2, 1970 that plaintiff W. J. Anderson had had an accident by falling on the stile in question, which is contrary to defendant's direct testimony.

The Liability Accident Notice, which was not allowed in evidence, but made a part of the record, shows that on November 2, 1970, the agent received information about the accident from the defendant.

"The determination of the materiality and relevancy of rebuttal testimony, like evidence offered upon any issue at any other stage of the trial, lies largely within the discretion of the trial court." Glass v. Stratoflex, Inc., 76 N.M. 595, 600, 417 P.2d 201, 204 (1966).

■ Defendant may be discredited or impeached by contradictory evidence. U. J.I. 15.4. The evidence offered by plaintiff was contradictory. It was also admissible in evidence for impeachment even though it injected the matter of insurance into the case. Wood v. Dwyer, 85 N.M. 687, 515 P.2d 1291 (Ct.App.1973). Cf. Selgado v. Commercial Warehouse Company, 526 P.2d 430 (Ct.App.), 1974; § 20–4–411, N.M.S.A.1953 (Repl.Vol. 4, Supp.1973). We recognize that the question of insurance before a jury can be prejudicial as well as proper and dignified. See Hale v. Furrs Incorporated, 85 N.M. 246, 511 P.2d 572 (Ct.App.1973) and special concurrence.

■ Because of this difference in view, to weigh the probative value of impeachment testimony versus the question of insurance rested in the sound discretion of the trial court.

■ If the trial judge had ruled upon the admission or exclusion of the plaintiff's rebuttal witness, his discretion would not have been disturbed on appeal. He chose neither route. Instead, he chose to give evidence himself. This was error because "The process of proving facts under the traditional Anglo-American system of trial demands rigorous guaranties of accuracy, with its insistence upon proof by witnesses having first-hand knowledge . . . ." McCormick on Evidence (1954), at 687. See also, Rule 43 of the Rules of Procedure on Evidence [§ 21–1–1(43), N.M.S.A.1953 (Repl.Vol. 4)].

The statement of the trial judge to the jury was evidence, like any other, that should have been taken from witnesses in open court.

Was it reversible error? We say "No."

■ All error is not reversible. Levine v. Gallup Sand and Gravel Company, 82 N.M. 703, 487 P.2d 131 (1971). Reversible error occurs where the substantial rights of the adverse party have been affected. Otherwise no judgment shall be reversed by reason of such error. *Levine,* supra; State v. Lopez, 85 N.M. 742, 516 P.2d 1125 (Ct.App.1973); § 21–2–1(17), (10), N.M. S.A.1953 (Repl.Vol. 4); See also, § 21–1–1(61), N.M.S.A.1953 (Repl.Vol. 4); § 20–4–103, N.M.S.A.1953 (Repl.Vol. 4, 1973 Supp.)

First, defendant objected to plaintiff calling either of the witnesses of defendant's insurance company to testify in person. Defendant cannot now complain that he was not allowed to rebut the statement of the court. If the defendant wanted to avoid this evidentiary problem, he had a duty to request the court to allow the testimony of his insurance company's agent or claims man. In this way, defendant could have preserved his rights of examination and explanation of the alleged impeachment process. It is doubtful that the disclosure of insurance would have affected the result in this case.

Second, the court did not instruct the jury that defendant was impeached. It merely stated that defendant knew about the accident earlier which was contradictory to his direct testimony. What value

does this have? McCormick on Evidence, 2d ed. (1972) § 47 at 97, 98 says:

. . . It merely tends to show . . . that [the witness] has erred or falsified as to certain particular facts, and therefore is capable of error or lying, and this should be considered negatively in weighing his other statements. But all human beings have this capacity and all testimony should be discounted to some extent for this weakness. . . .

Defendant compares the trial court's statement to the jury with an instruction given pursuant to § 21–1–1(51), N.M.S.A. 1953 (Repl.Vol. 4). The trial court's statement, supra, advises the jury that it "may accept as a fact" that defendant knew of plaintiff's accident on November 2, 1970. The trial court gave U.J.I. Instruction No. 17.4, entitled "Rules of Evidence." It included the statement that the jury could *consider* as evidence "any facts which the court instructs you to accept as true." Defendant did not object to this instruction.

Defendant further contends the trial court invaded the province of the jury by telling them that they must take as true that defendant had been impeached. The court simply stated that the fact set out above was "contrary to the defendant's direct testimony." The trial court instructed the jury on U.J.I. 17.5, Credibility of Witnesses. This placed the jury in the sole position of determining the credibility of the defendant and the weight to be given to his testimony.

Rule 51, 1(h) of the Rules of Civil Procedure [§ 21–1–1(51)(1)(h), N.M.S.A.1953 (Repl.Vol. 4)] reads:

The judge, in so instructing the jury, may make such fair comment on the evidence and the testimony and credibility of any witness as in his opinion is necessary for the proper determination of the cause; but if such comment is made, the judge shall inform the jury that they are the sole judges of all questions of fact.

The trial court instructed the jury under U.J.I. 17.3 that "[y]ou are the sole judges of all disputed questions of fact in this case."

"To invade the province of the jury" means that the trial court must not instruct the jury with respect to any fact on which the jury is required to make a determination in arriving at its verdict. Board of Com'rs of County of Vanderbaugh v. Flowers, 136 Ind.App. 597, 201 N.E.2d 571 (1964). See Porter v. Ferguson-Steere Motor Company, 63 N.M. 466, 321 P.2d 1112 (1958).

The statement made by the court to the jury had no bearing on any fact necessary to assist the jury in arriving at a verdict. There was no invasion of the province of the jury.

The statement of the court· to the jury was not reversible error.

(C) *It was proper for the trial court to apply the Uniform Building Code and to instruct the jury thereon.*

The trial court instructed the jury:

That defendant constructed a stairway or stile in violation of the building code of the City of Farmington city ordinance. You are instructed that the defendant was negligent as a matter of law since he did violate such ordinance.

Defendant contends that the wording of the Uniform Building Code was not intended to cover the stile.

Section 102 of the Code reads:

*The purpose of this Code is to provide minimum standards to safeguard life or limb,* health, property, and public welfare by regulating and controlling the design, construction, quality of materials, use and occupancy, location and maintenance of all buildings *and structures* within the city and certain equipment specifically regulated herein. [Emphasis added.]

A stile is defined in Webster's Third New International Dictionary, Unabridged (1966), at 2243, as follows:

. . . steps or rungs to assist a person over a fence while remaining a barrier to livestock; turnstile . . .

In addition to the language of this definition, the stile in the present case also had handrails on each side following the steps upon and down over the fence.

■ Was the stile a "structure" within the meaning of the municipal code? We think so for the same reason that an oil well and a water well are "structure[s]." Dysart v. Youngblood, 44 N.M. 351, 353, 354, 102 P.2d 664 (1940). We look to the purpose of the ordinance. "We are accustomed to think of a 'structure' as something above ground, in the nature of a building, but this is not necessarily the only meaning of the word. . . . [T]he term is broad . . . ." It should be given a construction which fits the purpose of the ordinance, viz., " . . . to provide minimum standards to safeguard life or limb . . . ." Albuquerque Foundry & Machine Works v. Stone, 34 N.M. 540, 286 P. 157 (1930), quoted in *Dysart,* supra; Uniform Building Code, § 102.

In Reuter v. Rhodes Investment Co., 71 Wash.2d 31, 425 P. 929 (1967), a temporary wooden walkway constructed to be used by pedestrians during demolition of an adjacent building was held to be a "building" within the Uniform Building Code.

The word "structure" is defined in the Code.

Structure is that which is built or constructed, an edifice or building of any kind, or any piece of work artificially built up or composed of parts joined together in some definite manner.

This definition is in keeping with the general definition of the word "structure."

In Black's Law Dictionary, Revised 4th ed. (1968), at 1592, the word "structure" is defined, omitting citations, as follows:

Any construction, or any production or piece of work artificially built up or composed of parts joined together in some definite manner. That which is built or constructed; an edifice or building of any kind. Poles connected by wires for the transmission of electricity. A mine or pit. Swings or seats are not.

The words *"buildings and structures"* used in the ordinance do not fall within the ejusdem generis doctrine. The doctrine applies where the terminology used is "building, stadium or other structure." Cf. Cardinal Fence Co., Inc. v. Commissioner, Bur. of Rev., 84 N.M. 314, 502 P.2d 1004 (Ct.App.1972); State v. Ornelas, 42 N.M. 17, 74 P.2d 723 (1937).

The plaintiff presented the testimony of an architect with a degree in architecture from Ohio University in 1960. He testified that under the Uniform Building Code, the stile was a structure.

We conclude that the Uniform Building Code was intended to cover the stile.

Defendant's main contention is that the stile in this case is not a "stairway" within the meaning of the Uniform Building Code. That is correct. The "stairway" is defined in the Code as "two or more risers." The stairway is simply a part of the stile or a part of the "structure."

Defendant relies on Jellum v. Normanna Lodge No. 3, 31 Wash.2d 846, 199 P.2d 108 (1948). It involves an early Uniform Building Code. The accident occurred while plaintiff was walking down steps from a stage without handrails in a building. The Building Code provided only for exit stairways and the court held the stage steps and handrails were not covered by the Code.

Under the Farmington Code, "Every stairway serving any building or portion thereof shall conform to the requirements of this Section." Under *Reuter,* supra, decided 19 years after *Jellum,* supra, involving the modern Code, and under the definition of "structure" in the Code, we believe that the rise and run of every step in a "stairway" of a "stile" would be applicable.

This court believes that the safety of the public in Farmington exceeds in importance any narrow or strict construction of the Uniform Building Code.

■ The trial court did not err in applying the Code and instructing the jury that defendant was negligent as a matter of law.

(D) *Instruction on contributory negligence not erroneous.*

The court instructed the jury:

When I use the expression "contributory negligence" I mean negligence on

the part of the plaintiff that proximately contributed to cause the alleged damages of which plaintiff complains [U.J.I. 13.-1], *such negligence may be where the plaintiff intentionally and unreasonably exposes himself to danger created by the defendant's negligence, of which danger the plaintiff knows or has reason to know.* [Emphasis added.]

The emphasized portion of the instruction was added onto U.J.I. 13.1, the definition of contributory negligence. Defendant objected because the instruction did not complete Second Restatement of Torts, § 466(a) and (b) as set forth in Williamson v. Smith, supra. The emphasized portion of the instruction complies with § 466(a) but omitted § 466(b).

Defendant claims now that the instruction was prejudicial for failure to include in the instruction that plaintiff's conduct fell short of the standard to which the reasonable man should conform in order to protect himself from harm; that "The instruction ignored the duty of the plaintiff to exercise reasonable care to avoid injury to himself at all times." We cannot agree.

In *Williamson,* 83 N.M. at 341, 491 P.2d at 1152, the court said:

. . . We recognize however that experience may indicate the desirability of modifying or expanding our present U.J.I. definitions of negligence (U.J.I. 12.1) and contributory negligence (U.J.I. 13.1).

This modification or expansion has not occurred. We recognize that later decisions did refer to § 466(b) that plaintiff's conduct fell "short of the standard to which a reasonable man should conform to protect himself from harm." Martinez v. City of Albuquerque, 84 N.M. 189, 500 P.2d 1312 (Ct.App.1972); Otero v. Burgess, 84 N.M. 575, 505 P.2d 1251 (Ct.App.1973). This language pertained to evidence, not to the law to be stated in instructions.

When the Supreme Court decided that U.J.I. instructions were not to be given, it expressly so declared. Williamson v. Smith, supra; Alexander v. Delgado, 84 N.M. 717, 507 P.2d 778 (1973).

■ We hold that U.J.I. 13.1 is the definition of contributory negligence to be given—nothing more, nothing less.

■ The trial court must use U.J.I. instructions unless the trial court finds and states of record that under the facts or circumstances of this case the published Uniform Jury Instruction is erroneous or otherwise improper. Section 21–1–1(51), subd. 1(c), N.M.S.A.1953 (Repl.Vol. 4). A failure to comply with the order of the Supreme Court in this regard constitutes error. Jewell v. Seidenberg, 82 N.M. 120, 477 P.2d 296 (1970); 49 A.L.R.3d 121 (1973); Chapin v. Rogers, 80 N.M. 684, 459 P.2d 846 (Ct.App.1969); Clinard v. Southern Pacific Company, 82 N.M. 55, 475 P.2d 321 (1970). But it is reversible error only if the defendant can show that he is prejudiced by the failure to give U.J.I. 13.1 alone, and that substantial rights have been harmed. Jewell v. Seidenberg, supra. To determine whether the failure to give a mandatory jury instruction is reversible error, this court would accept the slightest evidence of prejudice; that all doubt would be resolved in favor of the party claiming prejudice; and that the court's determination would be made by viewing the record in light of the standards it had adopted for a fair trial, rather than indulging in a presumption of prejudice. *Jewell,* supra. Cf. City of Albuquerque v. Ackerman, 82 N.M. 360, 482 P.2d 63 (1971); Levine v. Gallup Sand and Gravel Company, supra; Tafoya v. Whitson, 83 N.M. 23, 487 P.2d 1093 (Ct.App.1971) (a curable omission).

■ The trial court gave U.J.I. 12.1, a definition of negligence; U.J.I. 13.12 on Comparative Negligence; U.J.I. 12.2 on Ordinary Care; U.J.I. 12.3, Duty of Plaintiff to Use Ordinary Care. When these instructions are read together with U.J.I. 13.1, supra, with the court's addition of § 466(a) Second Restatement of Torts, the substance of 466(b) was covered. The jury was not misled. This is the difference between simple error and prejudicial error.

We have searched the record available to the court. We find no grounds for defendant's claim of prejudice. Considering the instructions as a whole, we think the jury was properly instructed on contributory negligence. Roybal v. Lewis, 79 N.M. 227, 441 P.2d 756 (1968).

Defendant had a fair trial.

Affirmed.

It is so ordered.

LOPEZ, J., concurs.

HENDLEY, J., specially concurs.

HENDLEY, Judge (specially concurring).

I concur in parts B, C and D of the majority opinion. I concur only in the result of part A. The discussion regarding "reasonable minds" is not necessary.

Under the state of the record before us the question of contributory negligence was one of fact to be determined by the jury. Proctor v. Waxler, 84 N.M. 361, 503 P.2d 644 (1972); Mozert v. Noeding, 76 N.M. 396, 415 P.2d 364 (1966).